ST. LOUIS S. W. RY. CO. OF TEXAS v. BROWN.

(Court of Civil Appeals of Texas. Dallas. Jan. 24, 1914. Rehearing Denied Feb. 14, 1914.)

1. MASTER AND SERVANT (§ 278*) — ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In a section foreman's action for injuries sustained when the car on which he was working was suddenly started, evidence *held* to show that he was injured by the negligent handling of the train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 264*) — ACTIONS FOR INJURIES — ISSUES — PROOF AND VARIANCE.

In a section foreman's action for injuries, a variance between the petition, which alleged that the car from which he was unloading ties

was stopped, and then, without warning, started with a sudden jerk, and evidence showing that the train was moving slowly at the time the sudden jerk occurred, was immaterial, and hence instructions to find for defendant, if the train was so moving, were properly refused.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

3. TRIAL (§ 260*)—INSTRUCTIONS COVERED BY OTHER INSTRUCTIONS.

In a section foreman's action for injuries caused by starting the car on which he was working with a sudden jerk, instructions that, if the train was slowly moving when it was caused to suddenly and unnecessarily jerk, to find for defendant, were in effect given in an instruction to find for defendant, if the jury did not believe that the train stopped, and was started suddenly.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

4. EVIDENCE (§ 471*)—FACTS OR OPINIONS.

In a section foreman's action for injuries caused by starting the car on which he was working, without warning, with a sudden jerk, a witness who had worked on the section for 1½ years prior to the injury, and off and on for 32 years in the operative departments, who was evidently accustomed to heeding railroad signals by whistles and otherwise, and who testied that he was not many cars from the engine, was properly permitted to testify that he could have heard the whistle of the engine if it had been blown; this being the statement of a fact rather than an opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

5. DAMAGES (§ 166*) — EVIDENCE (§ 528*) — CAUSES OF INJURY.

In an action for personal injuries, evidence that a hernia produced by traumatism could have been, and that the witness expected it was, caused by the injury was properly admitted over the objection that it was remote, prospective, irrelevant, immaterial, and not a subject of expert testimony.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 478, 479, 481; Dec. Dig. § 166;* Evidence, Cent. Dig. §§ 2335–2337; Dec. Dig. § 528.*]

6. DAMAGES (§ 143*)—EVIDENCE ADMISSIBLE UNDER PLEADINGS.

In an action for personal injuries, where there was evidence that strangulated hernia was not a peculiar hernia or a form thereof, but a condition that sometimes happens with any hernia, evidence as to the possibility of the one in question becoming strangulated was admissible, though there was no allegation of a strangulated hernia.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 410, 433; Dec. Dig. § 143.*]

7. DAMAGES (§ 166*)—EVIDENCE—EFFECTS OF INJURY.

It is competent to show the probable occurrence of future ill effects that may arise from an injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 478, 479, 481; Dec. Dig. § 166.*]

8. DAMAGES (§ 182*)—EVIDENCE—REDUCTION OF DAMAGES.

In an action for personal injuries, in which defendant pleaded that plaintiff was negligent in failing to have proper treatment of his injuries, and to have an operation performed, the testimony of a physician who testified as to the probability of a permanent cure from an operation, and as to the nature of the operation, that the ordinary man was inclined to shrink from an operation, and that every man

nearly knows that he is running some risk from an operation, was properly admitted..

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 473, 500; Dec. Dig. § 182.*]

9. DAMAGES (§ 168*)—ACTIONS FOR INJURIES —EVIDENCE.

In an employé's action for injuries, where defendant pleaded that plaintiff had engaged in work of various kinds requiring heavy lifting, whereby his injuries were aggravated, plaintiff's testimony that, though it hurt him to work, he did so because that was the only way he had to make a living was properly admitted.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 480, 482–486; Dec. Dig. § 168.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by Harry Brown against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Head, Smith, Maxey & Head, of Sherman, for appellant. Jones & Hassell and E. W. Neagle, all of Sherman, for appellee.

RAINEY, C. J. Appellee sued the appellant to recover damages for personal injuries inflicted upon him by the negligent handling of one of its trains; the allegations being, in effect, that while he, as section foreman, was engaged with a crew of men unloading ties along defendant's right of way from a train moving slowly along, the train stopped, and then, without warning to him, the engineer caused the train to start with a sudden jerk, and he was thrown violently against the end of a tie, which he was attempting to unload, causing a rupture in the lower part of the stomach, etc., injuring him, rendering him unable to perform physical labor, and causing him great mental and physical pain and suffering. Defendant answered by general denial and special pleas of contributory negligence and assumed risk and negligence in appellee failing to procure proper treatment, and in failing to use proper care for his injuries. A trial resulted in a verdict and judgment for appellee for $2,500, from which this appeal is taken.

[1] We conclude from the evidence that appellee was appellant's section foreman, and assisting in unloading ties, and was injured by the negligent handling of the train, which is shown by his testimony, which testimony is corroborated by several witnesses, and is as follows: "It was usual and customary for the train to move along slow while we were unloading ties with the train in motion. It was my duty to direct the movement of the train in reference to the unloading of a car of ties. I had given some directions that morning with reference to the movement of the train. I gave those directions to the brakeman. He would signal the engineer. The engineer would move the train in reference to signals. * * * The train did come to a stop. When the train stopped it didn't more than stop until it just reversed and came back. I started after a tie as it stopped, and I caught hold of the tie, and slipped it off, and as I slipped the tie nearly off the pile the train gave a jerk. * * * I got hold of it, and was going toward the door with it, and was going to throw it out while the train was stopped. Having stalled there, I intended having him to stand there a little while; but before I had time to get this tie out, and give them a signal out the door to stand, he just reversed the train and came right back in a hard jerk—just flung the engine right back as quick as he could reverse it, and came back. Not a thing was done by the engineer or any one else in reference to giving signals or warning as to any other movement going to be made of the train after it stopped." The sudden jar or jerk threw some of the crew against the appellee, knocking him against the end of the tie, causing him to be ruptured.

[2, 3] The first two assignments are grouped. They complain of the refusal to give two special charges which are in substance the same and that is: The jury are told that, if they believe the train was slowly moving when it was caused to suddenly and unnecessarily jerk, which caused another employé to bump against plaintiff, and knock or throw him against the end of a tie, to find for the defendant, etc.

The theory of appellant, it seems, is that, the allegations of the petition being that the train was standing just before it started with a jerk, and there being one witness who testified that the train was moving slowly when the jerk occurred, a material issue was raised as to that point, which called for the special charge.

Under the court's charge we do not think appellant was injured by the refusal to give the requested charges, or either of them, for, if all the evidence had shown that the train was slowly moving, as testified to by the one witness, the variance between the allegations and evidence would be immaterial. The gist of the negligence alleged was the sudden jerking of the train. However this may be, the court charged the jury: "If you do not believe from the evidence that said train stopped, and was started suddenly, * * * you will find for the defendant"— which was, in effect, telling the jury that, if they believed the train was moving, to find for the defendant.

[4] The third assignment is: "The court erred in permitting Ben Benjamin, a witness offered by the plaintiff, to testify, over the objection of the defendant, that the question called for an opinion and conclusion of the witness, and not a statement of facts; to testify that 'the distance he was from the engine he could have heard the whistle if it had blown.'"

The witness Ben Benjamin, one of the section crew, testified: "Under the customary way of doing that work of unloading ties when the train stopped, without any signal from the foreman, the engineer would give a signal with his whistle before he would move the train again. He would give three blasts of the whistle when he was going to back up. When he backed this train up on the occasion I have spoken of, I never heard any signal given. I did not see or hear any signal given. I do not know exactly how far we were from the engine. We were not many cars from it though. I had heard that engine whistle before, time and again; lots of times. Taking the distance I was from the engine, I could have heard it if it had blown. I had worked for Mr. Brown on this section something over 1½ years up to the time he was injured." The witness further testified that he had, off and on, for 32 years been working in the operative departments. He was evidently accustomed to heeding railroad signals by whistles and otherwise, and from his position was qualified to testify as to whether he could have heard the signal had it been given, and we think his evidence in the particular complained of should be regarded as a statement of a fact, and not an opinion, and there was no error in the court in admitting it in evidence. Electric Co. v. Boer, 108 S. W. 199.

[5] The fourth assignment complains of the action of the court in allowing Dr. J. F. Jones, a witness for plaintiff, to testify that "he expected the condition he found plaintiff in must· have been due to the injury he received at the time"; and further to testify that "he thought it possible for such a condition as he found in plaintiff to have been produced by a cross-tie striking him in the lower part of the abdomen, and that hernias produced by violence are ordinarily due to a sudden blow or a sudden strain thrown on the abdominal muscles."

The fifth assignment complains of the admission of like testimony given by Dr. E. J. Neathery.

The objection to the testimony of both witnesses was that it was too remote, and prospective, irrelevant, and immaterial, and a matter not a subject of expert testimony.

The injury having been produced by traumatism, it was properly shown by experts that such blow was calculated to produce the result that followed, and there was no error in admitting the testimony. Railway Co. v. Hall, 81 S. W. 571; Railway Co. v. Burnett, 80 Tex. 536, 16 S. W. 320; Railway Co. v. Cherry, 44 Tex. Civ. App. 344, 98 S. W. 898; Railway Co. v. Henefy, 115 S. W. 57.

[6, 7] The sixth assignment of error complains of the court in allowing Dr. J. F. Jones to testify that: "A protrusion of the bowels through the abdominal walls might interfere with the circulation of the contents of the bowels; that, when man eats food, and it goes through the digestive process, in the process of digestion the food is gradually passed through the bowels from the mouth to the stomach, and on into the intestines; that, if the bowel goes through an opening of the character plaintiff had, the effect of that could interfere very materially with the circulation of the contents of the bowels, and, if it is sufficiently tight that the contents will not pass, we call it a strangulated hernia. A strangulated hernia is not a peculiar hernia; it is merely the bowel goes through the opening, and for some reason it gets caught in there, and it is strangulated; there is a possibility of any hernia becoming strangulated. Strangulated hernia is always very serious; · it may kill."

Similar testimony by Dr. J. H. Glasscock relating to strangulated hernia was admitted over objections.

These witnesses had examined the injury to plaintiff.

The proposition submitted is: "The evidence of the medical witnesses offered by appellee who had examined him should have been confined to a diagnosis and prognosis of the injuries alleged in plaintiff's petition. There being no allegation of strangulated hernia. in the petition, it was error to permit medical testimony as. to strangulated hernia and the possible results thereof where it existed." The testimony shows that strangulated hernia. is not a peculiar hernia, but a condition that sometimes happens with any hernia. Dr. Glasscock, after explaining what a natural hernia was, testified: "But this is not that kind of hernia; it is not a natural hernia; it is a hernia in which there has been a spreading of the muscles. The aperture has been made through the muscle, and the bowel has slipped through that aperture. * * * It comes through there, and can be pressed upon and go back; but it is prone to come out again. * * * Now this is just as serious, just as dangerous, because it may become constructed there; may become congested; may be caught there; gases and contents of the bowels may fill it up so you can't put it back through the aperture." Strangulated ·hernia being a condition and not a form of hernia, it was not necessary to, allege it to authorize the admission of evidence in relation thereto, and as it was shown that, with the character of hernia with which appellee was suffering, the bowels were prone to protrude through the aperture and become obstructed or congested, and thereby cause strangulation. It is competent to show the probable occurrence of future ill effects that may arise from an injury. Railway Co. v. Harriett, 80 ·Tex. 73, 15 S. W. 556.

[8] Appellant's eighth and ninth assignments complain of the admission of testimony by physicians that the ordinary man is inclined to shrink from an operation, and that every man, nowadays, nearly knows that, when he has to be operated on, he is running some risk; the objection being that it was

not a subject of expert testimony, but was an invasion of the province of the jury.

While 'the physicians testified that the chances were very good for a permanent cure of this rupture by an operation, it is stated that every case is not successful. Dr. Jones stated: "This operation would involve going into the abdominal cavity in a way. You would have to cut off a portion of the peritoneum. The peritoneum is the covering of the contents of the stomach. * * * I think almost all patients have a dread of an operation of that sort." No class of persons have a better opportunity of knowing the risk of such an operation than physicians have, or how such an operation is regarded by the ordinary man. It was also shown that the taking of an anæsthetic proved dangerous, and we think it was proper to give their opinion to the jury to rebut the effect the testimony would have that a cure would result from an operation upon the jury that care was not exercised in failing to resort to an operation by the appellee.

Appellant pleaded that appellee was guilty of negligence in failing to have proper treatment of his injuries, and in failing to have an operation performed. We are of the opinion that under the circumstances the evidence was admissible.

[9] The tenth assignment complains of the action of the court in permitting appellee to testify that "the reason he worked, although it hurt him to work, was because he had to do it to make a living, that it was the only way he had to make a living."

Appellant pleaded that appellee had engaged in work of various kinds, requiring heavy lifting, and that his injuries had been aggravated thereby, etc. This testimony was offered to meet the issue raised by the appellant. While we think it was competent, yet, if not, we think it did not increase the amount of the verdict.

The other and last assignment is that the verdict is excessive. We do not think the verdict shows that it was caused by anything that created prejudice or undue influence in the minds of the jury, and the judgment is affirmed.

Affirmed.