### BECK et al. v. WAHLGREN et al.

No. 9598.

Court of Civil Appeals of Texas. San Antonio.

Oct. 16, 1935.

Myrick & Johnson and J. I. Coursey, all of Harlingen, for appellants.

Seabury, Taylor & Wagner, of Brownsville, and R. E. Minton, of Lufkin, for appellees.

SMITH, Chief Justice.

At the time of the occurrence of the accident involved herein, J. P. Beck and his son, D. C. Beck, operated a lumber yard in the city of Harlingen, and the Temple Manufacturing Company was a frequent customer of the lumber yard. A. E. Wahlgren was a truck driver for the manufacturing company, and Rosendo

Cantu was an employee of the Becks, it being his duty to load out lumber purchased by customers. Both were young men. Wahlgren had suffered the loss of one of his legs, for which he wore an artificial substitute.

On December 2, 1933, the manufacturing company directed Wahlgren to take a truck and pick up an order of lumber from Becks' yard. The order was for fifty pieces of 10' x 1" x 4" lumber. The truck was too high to permit it to enter the arched gateway into the lumber yard, and so, according to custom in such cases, Wahlgren backed his truck up to the gateway, to receive the lumber, which was stored in stalls in the interior of the yard about 100 feet back from the gate. Thereupon, Wahlgren and Cantu, the lumber yard employee, took a small truck belonging to the yard and parked inside, and, with Cantu driving, ran it back to the stored lumber, loaded the order thereon, in ten and twenty-foot pieces, backed it out the gateway to connect with Wahlgren's truck, for the purpose of transferring the lumber from the smaller to the larger truck. Wahlgren undertook to make the transfer while Cantu manipulated the smaller truck, and in that situation was crushed between the two vehicles, dying shortly thereafter as a result.

Wahlgren's mother, Naoma Wahlgren, brought this action against the Becks, and recovered judgment, upon a jury verdict, for $4,500 damages sustained by reason of her son's wrongful death. An insurance company which had paid Mrs. Wahlgren $2,438.75 under the terms of the Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.) intervened and was subrogated in that amount to the rights of the mother in the judgment recovered herein by her. The Becks have appealed, and seek reversal upon four propositions of law.

In their first proposition appellants contend that when Wahlgren called for the lumber and placed his truck at the gate to receive it, D. C. Beck, in control of the yard, directed Cantu, his loader, to "carry the lumber by hand in loading it on the truck"; that Beck turned away upon other errands, and that thereupon Wahlgren induced Cantu to disregard that instruction and use the small truck, instead of his hands, in moving the lumber from the stalls to the large truck; that by this device Wahlgren made Cantu his agent, instead of Beck's, whereby the latter was relieved of responsibility and liability for Cantu's subsequent negligence, which resulted in Wahlgren's injury and death.

The jury found, in answer to a special issue submitted without objection from appellants, that Beck did not instruct Cantu to carry the lumber by hand to Wahlgren's truck. Appellants complain in their first proposition of this finding, and insist that under the undisputed evidence the court should have directed a verdict for them. We overrule the proposition. Stating the evidence in the light most favorable to appellees, as we must do in support of the judgment, the following facts appear: When Wahlgren backed his car up to the outer gate, to be loaded, Beck instructed his loader, Cantu, "to carry the lumber for him" (Wahlgren). Beck turned away, and Wahlgren and Cantu started through the yard towards the lumber stalls. As they reached the small truck, parked about half way back, Wahlgren said to Cantu, "Let's us get this truck and then back it into (my) truck," because "he was in a hurry." Cantu testified that "I done what he said and got on the truck and drove it to where the lumber is and get up on top of the stall and get the lumber off the second floor, and Mr. Wahlgren got on the Chevrolet truck and I handed the lumber to him." When they got the lumber loaded on the small truck, Cantu backed it across the yard to the Wahlgren truck. Wahlgren began transferring the pieces to his truck, and while so engaged was crushed by the smaller truck against the larger. The use of the smaller truck constituted the usual method by which lumber purchased by the manufacturing company from appellants was loaded into its truck, and the method sometimes employed by appellants in loading lumber for other purchasers. We are of the opinion that in this state of facts the jury could properly conclude, as they did, that Beck's instruction to his employee, in the presence of Wahlgren, was not so specific or positive as to require them to carry the lumber by hand from the stalls to Wahlgren's truck, or to prohibit them from resorting to the particular method used, and that these conclusions justified the jury in finding that Beck did not "instruct Cantu to carry the lumber by hand to the" Wahlgren truck. The instruction to Cantu was to "carry the lumber" for Wahlgren. Under all the evidence and circumstances shown by the record, the jury could conclude that

the instruction did not mean, necessarily, that Cantu should carry the lumber, some of the pieces of which were in fact twenty and some of it ten feet long, in his hands the full distance of one hundred feet from the stall to Wahlgren's truck. The method used was not such a deviation from that instruction as to make Cantu the agent of Wahlgren, and thereby relieve appellants of liability for his negligent acts in the transaction.

Following the accident, Cantu several times explained how the accident occurred, to the effect that he "thought" his truck was geared "in low" or "neutral," when in fact it was in "reverse," and through this mistake backed against Wahlgren, crushing him against his own truck. These explanations by Cantu were made to or in the presence of a number of bystanders, attracted to the scene by the accident; they were obviously purely voluntary. They were made in the excitement which overwhelmed him when he realized the deplorable outcome of the accident. The trial judge and jury could have found that the statements of Cantu were made at any time between five and thirty, or even sixty, minutes after the accident. The statements were offered as a part of the res gestae, and were vigorously objected to by appellants as being without the rule. We have carefully considered the record, as well as the contention of appellants, and are of the opinion that the trial judge did not abuse his discretion in admitting those statements, as a part of the res gestae. 17 Tex.Jur. §§ 259, 261, 262, p. 614 et seq., and authorities there cited. Moreover, if the admission of this evidence was error, it was a harmless one, since it related only to the issue of Cantu's negligence in driving his truck against Wahlgren, and appellants do not complain of the jury's adverse finding upon that issue.

In their third proposition appellants complain that the verdict and judgment for $4,500 was excessive. Briefly, the evidence warranted the implied jury findings that deceased was thirty years old when he was killed, was unmarried, and had always resided with and helped support his mother, to whom he was contributing practically all of his $12 weekly salary at the time of his death; that although he had lost his leg, when he was eleven years old, he was always strong, healthy, industrious; that before the depression his wages were $20 or more a week; that he stayed home when off duty, did not run around; that he "got around fine" with his artificial leg; that he did general work in his employer's plant, drove and loaded trucks, did carpenter and machine work, was a "general handy man," and was able to do the work of warehouse foreman, and all other things the foreman would do, and was in line of promotion to a $90 job in his employer's plant, was sober, conscientious, and attentive to work; that his life expectancy was thirty-seven and one-half years, and his mother's (appellee's) seventeen years. We are of the opinion that the evidence was sufficient to sustain the verdict and judgment, and overrule appellants' third proposition accordingly.

Appellants' fourth and last proposition is directed at the argument of appellees' counsel, but there is no statement under that proposition, showing the transaction sought to be complained of, or record references thereto. The proposition therefore presents nothing for review.

The judgment is affirmed.