## SOUTHWESTERN FREIGHT LINES

v.

## McCONNELL.

No. 5033.

Court of Civil Appeals of Texas.

El Paso.

May 26, 1954.

Rehearing Denied June 23, 1954.

Burges, Scott, Rasberry & Hulse, J. R. Hulse and William F. Smith, El Paso, for appellant.

R. P. Langford, Kemp, Smith, Brown, Goggin & White, El Paso, for appellee.

McGILL, Justice.

This is a suit for compensatory damages. for personal injuries brought by appellee as plaintiff against appellant as defendant. By cross-action the defendant made Alphonse Monroe a party to the suit and sought to recover against him any judgment that might be recovered by plaintiff against defendant. The injuries to plaintiff resulted from an accident when an employee of defendant Southwestern Freight Lines, driving a tractor with a heavily loaded trailer attached east on Overland Street, turned north into Cotton Avenue in the city of El Paso and swerved to the left in order to avoid striking a Ford car

which had been parked in Cotton Avenue in the line of traffic by Alphonse Monroe. The trailer after side-swiping the Ford car tilted over on the Kaiser car which was parked a short distance north of the Ford and in which plaintiff was sitting, he having just arrived at this spot.

Trial was to a jury. On answer to special issues the court rendered judgment in favor of plaintiff against defendant for $3,750 and in favor of defendant against Monroe for a like amount.

This is the second appeal in this case. Our opinion on the first appeal appears in 254 S.W.2d, pages 422–425.

The jury findings on which the judgment here involved was rendered are (1) The operator of defendant's tractor and trailer just prior to the accident was driving the same at an excessive rate of speed under the circumstances then existing; (2) in so driving the operator was negligent; (3) such negligence was the proximate cause of the accident; (4) the jury did not find that the operator was driving just prior to the accident at a rate of speed in excess of thirty miles per hour; (6) just prior to the accident the operator turned the tractor and trailer to the left at a greater rate of speed than was safe under the circumstances then existing; (7) the jury failed to find that in so driving the operator was negligent; (9) they failed to find that just prior to the accident the operator failed to keep a proper lookout for the vehicles parked involved in the accident; (12) just prior to the accident the operator failed to bring the tractor and trailer to a stop; (13) they failed to find that such failure was negligence; (15) the Ford automobile just prior to the accident was not parked parallel to and within eighteen inches of the east curb of Cotton Avenue; (16) such failure was not the sole proximate cause of the accident; (18) the operator was not at the time of the accident acting under an emergency; (19) the accident was not an unavoidable accident; (20) damages to plaintiff in the sum of $3,750.

Appellant has presented eighteen points on which it seeks a reversal: First, it earnestly insists that the court erred in overruling its motion for judgment non obstante veredicto because the findings of the jury and the undisputed evidence show that as a matter of law the speed of appellant's tractor could not have been a proximate cause of the collision. The basis of this contention is that the element of foreseeability, which is an essential element of proximate cause, is lacking; that since the operator of the tractor, as found by the jury, was keeping a proper lookout; was not negligent in failing to stop before the collision or in turning his tractor to the left just before the impact and the Ford was improperly parked and this was a proximate cause of the collision; these findings established that the operator did not and could not have discovered the position of the Ford until a moment before the accident.

■■ It seems so obvious to us that the evidence is ample to support the finding that excessive speed was a proximate cause of the accident that we shall not labor the point. Had the operator of the tractor had it under control when he turned into Cotton Avenue and became aware that the Ford car was in his line of traffic, it seems incredible that he could not have stopped before hitting the Ford, which was at a distance of at least 150 feet from him. He testified that with the powerful brakes on the equipment he was driving he could stop in ten feet while going thirty miles per hour; that he was afraid to apply the brakes to their full extent because to do so would have caused the equipment to turn over. The turn into Cotton Avenue from Overland is a sharp turn. Cotton Avenue is a heavily traveled street. Excessive speed is a constituent element of lack of control. Blaugrund v. Gish, Tex. Civ.App., 179 S.W.2d 257, affirmed 142 Tex. 379, 179 S.W.2d 266.

Therefore finding (1) is tantamount to a finding that the operator of defendant's equipment did not have it under control

when he attempted to negotiate the turn at the intersection of East Overland and Cotton Avenue. The trailer was a high trailer and was loaded to capacity. The weight of the trailer was 7,000 pounds. It does not appear what the weight of the load was, but the jury could reasonably infer from the rubber marks left on the pavement that the load was heavy. From all the facts and circumstances finding (3) that excessive speed was a proximate cause of the accident is amply supported by the evidence. We overrule this point.

■ The second point is that the court erred in admitting over objection the testimony of police officer Downey to effect that when he interrogated the operator of the tractor subsequent to the accident the driver stated that prior to the accident he was driving at the rate of thirty miles per hour, and the third point is that it was error to admit over objection the testimony of the witness Bolton that some time subsequent to the accident he heard the operator of the tractor state that he was driving "twenty-five, thirty-five, forty-five".

The evidence shows that the police officer arrived at the scene of the accident four or five minutes after receiving the call, and that the call was made immediately after the accident, also that the statement as to which Bolton testified was made at the scene of the accident shortly after it occurred. The equipment was in the same position as it was immediately after the accident when these statements were made. It is true that it appears that the driver of the tractor had left the scene of the accident and gone to a filling station across the street and reported it to his employer, and had returned to the scene of the accident when he made these statements. We think under these circumstances the court did not abuse his discretion in admitting this evidence as part of the res gestae; that the statements were made in answer to questions is not controlling. Dallas Railway & Terminal Co. v. Burns, Tex.Civ.App., 60 S.W.2d 801, citing 17 Tex.Jur. 620.

These points were made on the first appeal of this case and were overruled. We see no reason to change our ruling.

■ The fourth point is that the court erred in refusing to grant defendant's motion for mistrial after plaintiff's witness Dr. Green volunteered the information that he had sent a copy of his report of plaintiff's physical condition to an insurance company, thus informing the jury that defendant was covered by insurance.

The record reveals that the following occurred:

"Dr. Green was called by the plaintiff as a witness. On cross examination he was asked:

"Q. You did give a statement about him on December 7, 1951, in which you stated that the patient's wounds healed promptly and he regained the use of the injured finger? A. Are you asking me if I made the statement?

"Q. Yes, sir. A. I wrote a letter to the insurance company on November 5, 1951 * * * oh, yes, I wrote you a letter on the 6th of December, 1951. I don't have the letter with me so I can't tell you what I said in the letter."

Defendant promptly moved for a mistrial, which the court denied.

It is apparent that the voluntary statement by Dr. Green was not induced by plaintiff, and we think equally clear that it was not induced by defendant. It does not indicate whether the "insurance company" referred to was an insurer of Southwestern Freight Lines equipment, or plaintiff's car, or plaintiff personally for hospitalization. Siratt v. Worth Construction Co., Tex.Civ.App., 263 S.W.2d 842.

Nor is there any showing that any harm resulted to appellant because of such statement. We judicially know that on the first trial of this case a verdict of $4,310.50 was returned where there was no reference to

insurance, whereas on this trial the verdict was for $3,750. If the reference to insurance could have had any effect the verdict should have been in a larger sum than on the first trial if we assume that a jury is more apt to render a judgment for a larger amount if it knows that defendant is protected by insurance, a fact of which the Supreme Court takes judicial notice. Kuntz v. Spence, Tex.Com.App., 67 S.W. 2d 254; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

Of course we realize that the force of such reasoning is weakened where the trials are before different juries. However, appellant does not affirmatively show that any harm resulted from this voluntary reference to insurance. We therefore follow Siratt v. Worth Construction Co., supra, and the authorities cited therein, and overrule this point.

The fifth point is based on the following:

"After the operator of the tractor had stated to officer Downey that he was driving thirty miles per hour just before the accident, Downey testified:

" 'I told him—I asked him at that time, Don't you think it was a little fast to go around a corner with the truck?' "

The defendant moved for mistrial. Such motion was overruled and the jury instructed not to consider the statement of the officer.

It is conceded by appellee that the statement of the officer was improper. Obviously such statement should not have been made. 19 Tex.Jur. pp. 396 and 398, Sec. 255–256.

It was a voluntary statement, not made in response to any question asked. However, we think such statement was not so prejudicial that it could not be cured by instruction, and that the court's instruction cured this error.

The sixth, seventh, eighth and ninth points complain of argument of plaintiff's counsel, and assign error because the court overruled defendant's objections. It would unduly prolong this opinion to set out in full the argument complained of. We can only briefly summarize it. Plaintiff's counsel during his closing argument told the jury that defendant's counsel had been trying to tell them that a car stalled in the street had no rights and they were privileged to run into such car with their equipment. This argument was a legitimate conclusion, deducible from the facts in evidence and from defendant's contention that the Ford automobile improperly parked was the sole cause of the accident. The next argument objected to, also made during the closing argument of plaintiff's counsel, was

"If you will carefully analyze the situation and don't get misled—they have done their best to try and mislead you—to try and get your mind away from the driver there * * *."

Appellee attempts to justify this argument on the ground that it was in reply to defendant's counsel's argument that the operator of defendant's tractor had in no way been guilty of negligence proximately causing the collision, and that the sole proximate cause of the collision was the improper parking of the Ford automobile. The bill of exceptions fails to show that any argument of plaintiff's counsel was in reply to argument of defendant's counsel. However, we think the argument was a legitimate deduction from defendant's position that excessive speed was not a proximate cause of the accident. It was no reflection on appellant's counsel—it merely reflects a disagreement of counsel as to deductions to be made from the facts in evidence.

The next argument of which complaint is made is:

"Now they ask about whether it was an emergency. There wasn't any emergency, gentlemen. An emergency is only brought about where something suddenly happens. Nothing suddenly happened that morning. I mean an emergency, for instance, would be something that came out of this street

suddenly and he had to take some action, or if some child ran out in front of his truck and he had to take some action, but these things were just stationary there in the street and he had seen them for a block. There wasn't any emergency whatsoever."

The court submitted Question No. 18 which inquired whether the operator of defendant's tractor and trailer was at the time of the accident acting under an emergency, and defined emergency:

"By the term 'emergency' as used herein means a condition arising suddenly and unexpectedly and not proximately caused by the negligent act or acts of such operator and which called for immediate action on his part without time for deliberation."

We do not construe the argument as being in conflict with the court's definition. It was merely a legitimate deduction that under the facts in evidence and the court's charge no emergency existed.

"Now you have the questions of speed, and it is undisputed that this truck and equipment laid down tire marks, burning rubber on that highway. It was perfectly visible."

and continued after exception:

"Well, whatever it is that makes tire-marks, I don't know. It was my idea that they were made by rubber on tires, but be that as it may, anyway there were very evident marks there on the street. The mark on this side being a heavy mark and the mark on that side being a lighter mark. And where did they start? Two hundred feet back from where the equipment finally turned over on Mr. McConnell's car, the car he was in. Two hundred feet! Two hundred feet is three times, over three times the length of this room. I would estimate that if you were standing up here and could see the tire-marks they would start over there by Judge Ward's door. Constant tire-marks coming up. There

weren't any before that point but they were perfectly evident before he had gotten into the intersection and extended on up to where the truck turned over. Anything that lays down those tire-marks you know very well was going at an excessive rate of speed."

and further continuing after objection:

"I must be getting under Mr. Hulse's skin."

The court sustained an objection to this last remark and plaintiff's counsel continued:

"You have got further the statement made by Jose Fernandez when the matter was fresh in his mind, spontaneously, immediately after the accident, that he was going twenty-five, thirty-five or forty-five miles per hour."

and after objection:

"And I believe the physical facts, the physical testimony—if you will take them into account you can't believe otherwise that no truck and trailer would lay down tiremarks of that distance and could not be stopped in a distance of two hundred feet before it turns over on another vehicle. And after it gets beyond the intersection traveled some ninety feet, twice the distance of this Courtroom and could not be stopped before it turns over on another vehicle."

"And they 'boo-hoo' about the amount of compensation, but who wants to go through life with a permanent disability and not being able to have all their faculties and all of their limbs in perfect order on account of the negligence of some other person."

The reference to the tire marks on the pavement was relevant to the issue of speed. The remark about getting under Mr. Hulse's skin though improper was cured by the court's instruction. The cumulative effect of all the argument was

not so prejudicial as to require a new trial in view of the court's instructions in connection therewith.

■ The tenth point assigns error in the court's failure to grant defendant's motion for a mistrial in connection with the question asked by plaintiff's counsel about the reason for defendant's trailer not being brought to El Paso on the Saturday night preceding the accident. It developed that it would have been unlawful for defendant to have brought this trailer because the combined lengths of this trailer and one that was brought that night would have been unlawful in Texas. We fail to see how defendants could have been prejudiced in any way by showing that it complied with the Texas law by hauling only one trailer from Anapra, New Mexico.

■ The eleventh point complains of that portion of the court's charge which instructed the jury that if they found plaintiff would suffer mental and physical pain in the future proximately resulting from the accident they might consider this in estimating his damage, because there was no evidence that plaintiff probably would suffer either mental or physical pain in the future proximately resulting from the accident. Dr. Basom testified that the type of injury plaintiff had suffered usually causes pain which might well be continuous; that in his opinion plaintiff was in pain when he saw him in January of 1952, and was in pain immediately after he operated on his hand, and that he still had symptoms of pain on the last examination he had made, and that he would suffer pain in the hand when he used it extensively; that tiredness and numbness experienced by a person in plaintiff's condition could be very painful.

Dr. Green testified that as a result of the accident the hand begins to pain plaintiff and results in his not being able to sleep; that it was reasonably probable that he would have pain. This testimony was not only sufficient but required the submission of future pain and suffering as an element of damage.

The twelfth and thirteenth points are that the court erred in overruling defendant's objections to the submission of special issues Nos. 1 and 2, and appellant's motion for a judgment non obstante veredicto, because the evidence was insufficient and there was no evidence to support the submission of such issues or the answers thereto. The fourteenth and fifteenth points for like reason complain of the court's overruling defendant's objections to the submission of Special Issue No. 2, and its motion for judgment non obstante veredicto, and the sixteenth and seventeenth points for like reason complain of the court's overruling defendant's objections to the submission of Special Issue No. 3. Appellee has not replied to these points. We think they are sufficiently disposed of by what we have said and they are overruled without further discussion.

■ The eighteenth and last point is that the court erred in refusing to grant a new trial because the damages are excessive. Plaintiff's injuries, according to Dr. Basom, consisted of

" * * * cuts, lacerations and bruises to his head and face, only one of which left a permanent scar on his cheek. He further incurred painful contusions and bruises to the left hip which have continued to cause Plaintiff pain on occasions up to the time the last trial was had. The hip was X-rayed twice in order to determine if there was a fracture of the neck of the femur. A tendon on the left hand was severed, with the result that Plaintiff had no use of the hand until it was operated and the tendon tied back together. Plaintiff was hospitalized twice and there were three operations performed on the hand in a period of one year in an endeavor to remedy its condition and remove all glass from within the hand. At the time of the last trial the hand had no grip to hold anything and such condition is permanent."

The amount of damages is primarily for determination by the jury. Any case must

434

be decided from the particular facts; no authorities are controlling and few are helpful. In this case two juries have fixed the amount of damages—on the first trial they were fixed at $4,310.50 and on this trial $3,750.

We find no evidence of bias or prejudice which would warrant our interference with the amount fixed. All points are overruled and the judgment is affirmed.