**Walter H. DUNCAN et ux., Appellants,**

v.

**Ewell D. SMITH, Jr., et al., Appellees.**

**No. 3796.**

Court of Civil Appeals of Texas.

Eastland.

Feb. 28, 1964.

Rehearing Denied March 13, 1964.

Strasburger, Price, Kelton, Miller & Martin, Hobert Price, Dallas, Fred Meredith, Terrell, for appellants.

Ralph M. Hall, Rockwall, J. Alex Blakeley and Rae Ann Fichtner, Dallas, for appellees.

Thompson, Coe, Cousins & Irons, Robert W. Porter, Dallas, for intervenors.

COLLINGS, Justice.

Ewell D. Smith, Jr., brought suit against Riley King, individually, d/b/a B. B. King, B. B. King, Inc., Buffalo Booking Agency, Millard Harvey Lee and Irene L. Duncan and husband Walter H. Duncan. Plaintiff sought to recover damages from the defendants for injuries sustained by him in an automobile accident which occurred on October 14, 1957, on a highway about nine miles west of the City of Terrell. Plaintiff alleged that at the time of the accident he was riding as a passenger in a butane gas truck being operated by his brother John Milton Smith, now deceased. He alleged that the accident was the result of negligence on the part of the defendants, individually, and acting in concert with each other; that Irene L. Duncan was the driver of a Chevrolet automobile at the time of the accident and that Millard Harvey Lee was the driver of a bus which ran into the Chevrolet automobile being operat-

ed by Mrs. Duncan, and then went across the highway at a place where it narrowed at a bridge and hit the butane gas truck.

Suit was also brought by Margaret Griggs Smith surviving widow of John Milton Smith, deceased, who was the driver of the butane truck and was killed as a result of the accident. Mrs. Smith brought suit against the same defendants in her own behalf and for her minor children. She was joined by John Smith, Sr., and wife, parents of the deceased, John Milton Smith, seeking to recover damages because of the death of their son. The two cases were consolidated.

Trial was before a jury which found Millard Lee, the driver of the bus, guilty of negligence proximately causing the collision, and that Mrs. Duncan was guilty of negligence proximately causing the collision in that (1) she was attempting to pass the bus, (2) she failed to keep a proper lookout, (3) she failed to apply her brakes, (4) she drove her car at a greater rate of speed that a person of ordinary care would have done under the same or similar circumstances and (5) she drove her vehicle to the left of the center of the roadway when within 100 feet of the bridge. Based upon the verdict judgment was rendered against defendants B. B. King, Inc., as owner of the bus and against Walter H. Duncan and wife Irene L. Duncan, and in favor of the named plaintiffs and various other plaintiffs on subrogation claims and for property damage. Defendants Walter H. Duncan and wife have appealed.

In appellants' first and second points it is contended that the court erred in refusing to hold there was no evidence, or in the alternative that the evidence was insufficient to support the findings by the jury that Irene L. Duncan was guilty of negligence proximately causing the accident.

An examination of the evidence relative to these points indicates the accident out of which this suit arose involved three vehicles, a bus owned by B. B. King, Inc., driven by Millard Lee, a Chevrolet automobile driven by appellant Mrs. Irene Duncan and a butane truck operated by John M. Smith, deceased, accompanied by his brother, appellee Ewell Smith, Jr. The accident occurred at 3:30 p. m. on October 14, 1957, at a bridge on highway 80 between Dallas and Terrell, Texas where the highway runs in an easterly and westerly direction. The bridge is 27 feet wide accommodating two lanes of traffic, one east bound and one west bound. From the east end of the bridge permanent guard rails extend east 57 feet along the north and south sides of the highway. The distance between the guard rails running east from the bridge gradually increases to the east end of the rails, and the over-all width of the highway immediately east of the guard rails including the two traffic lanes and the paved shoulders was 38.6 feet. The butane truck was travelling in an easterly direction. The King bus and the Duncan car were travelling west along the highway east of the bridge. As they neared the bridge and drove on to it, the bus was travelling partially in the west bound traffic lane and partially on the paved shoulder. Mrs. Duncan was at the time operating her vehicle to the left of and along side the bus and the evidence is conflicting as to whether her vehicle was to the left of the center of the roadway. The evidence is also conflicting as to whether the bus was attempting to pass Mrs. Duncan or she was passing the bus. Ewell Smith, Jr. testified that Mrs. Duncan was passing the bus. All other witnesses testified that the bus was passing her. In any event the bus struck the guard rail on the right side of the highway where it narrowed sharply to join the bridge, and then bounced toward the center of the highway into the right rear of the Duncan vehicle which was knocked into a sidewise position in front of the approaching butane truck, but the position of the Duncan car was somehow corrected so that it avoided a collision with the butane truck. The bus then veered still further left across the highway and struck the butane truck head-on as the truck came on to the west end of the bridge. The truck caught fire and John M.

Smith was burned to death. Ewell Smith, Jr., sustained serious injuries.

The testimony of Ewell Smith, Jr., constitutes some evidence that Mrs. Duncan was passing the bus on the occasion in question and that such act constituted negligence which proximately caused the accident. The fact that there was evidence to the contrary is not material in determining the question of whether there was any evidence to support the finding complained of. If it is assumed that Mrs. Duncan was attempting to pass the bus then there was also some evidence that she failed to keep a proper lookout, that she drove her car at an excessive rate of speed under the circumstances and that such acts were negligence and proximately caused the accident. Appellants' first point is overruled.

Appellants' second point complaining of the insufficiency of the evidence presents a more difficult question but a careful consideraton of the record as a whole convinces us that it also should be overruled. In determining the question of the sufficiency of the evidence we must consider all of the facts and circumstances in evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. The existence of negligence on the part of Mrs. Duncan proximately causing the accident in our opinion hinges principally upon the question of whether Mrs. Duncan was attempting to pass the bus. Mrs. Duncan and several disinterested witnesses testified that she was not passing the bus but that the driver of the bus was attempting to pass her car. The only evidence to the effect that Mrs. Duncan was passing the bus is from Ewell Smith, Jr., a party to this suit and an interested witness. The facts and circumstances of the case, aside from the conflicting testimony, do not show that either version is more probable than the other. Under such circumstances the fact that a witness is interested in the outcome of the suit or is a party thereto is not ground for refusing to give effect to his testimony even though it is contradicted by the testimony of all other witnesses. A question of fact is presented for the fact finding body. 24 Tex.Jur.2d 365, 366. In discussing the status of testimony of a party plaintiff and interested witness, it was held as follows in Haskins v. Henderson, Tex.Civ.App., 2 S.W.2d 864.

"The court had a right to believe his testimony and base the judgment he rendered thereon, notwithstanding it may have been contradicted, as appellant insists it was, by the testimony of all the other witnesses in the case."

Appellants' 8th, 9th, 10th, 11th and 12th points complain of the action of the court in permitting Dr. Conradt to testify that Ewell Smith is more susceptible to cancer since he received the burns in the accident. Appellants urge that the answers of the doctor clearly show that he was basing his testimony on speculation and possibilities as to what might happen in the future. We cannot agree with this contention and these points are overruled. The doctor's testimony was, in effect, that based upon reasonable medical probability, Ewell Smith because of his burns is more susceptible to skin cancer. The evidence was admissible and was not subject to the objections urged by appellants. St. Louis S. W. Ry. Co. of Texas v. Brown, Tex.Civ.App., 163 S.W. 383, (Error Ref.); Rea v. St. Louis S. W. Ry. Co., Tex.Civ.App., 73 S.W. 555; Missouri, K. & T. Ry. Co. of Texas v. Crum, 35 Tex.Civ.App. 609, 81 S.W. 72, (Writ Ref.).

In appellants' 13th and 14th points it is contended that damages in the sum of $175,000.00 in favor of Ewell D. Smith, Jr., is grossly excessive and that the court erred in not granting a new trial or in the alternative in not granting a remittitur down to $15,000.00. We cannot agree with appellees' contention that appellants failed to include in their motion for new trial a sufficient assignment of error to preserve these points on appeal. The assignment urged the granting of a new trial because the

award to Ewell Smith was "obviously so excessive as to show bias and prejudice on the part of the jury."

The record indicates that at the time of the accident on October 14, 1957, Ewell Smith was thirty one years of age and had a life expectancy of 36.88 years. He was a part time farmer and owned a small farm. He had also been a part time carpenter and house painter and according to his statement had done "every thing to make a living." He employed help to do most of the farm work. At the time of the accident he was employed by Urbane Butane Company as a butane truck driver and was earning $65.00 per week.

The evidence shows that the truck caught fire immediately after the collision and that Ewell Smith was burned painfully and terribly. There was no let-up from intense pain while he was in the hospital for a period of about two months. He was under medical treatment for his injuries for about two years. There were burns on his back which extended from about four inches above the waist line to about four inches below the waist line. His hands were burned all over and his arms were burned about three or four inches above his wrists. His face was burned all over but was worse on his mouth, nose, ears and on one side. He also had burns on his upper left chest. Some of the burns on his back, on his face and his left ear were third degree burns. There was a lot of actual destruction of outer layers of skin about his face and lips. He lost a portion of his left ear. While he was in Baylor Hospital skin grafts were performed on his right thigh and face. Smith did no work at all for a year and all work that he has done since the injury has caused pain. He has no feeling in his lips. In the summer he blisters every day; from the moment of his injury until the time of the trial, (5 years), he has continually suffered pain and discomfort; his condition has continued unchanged for three years prior to the trial and in his opinion will be permanent.

Smith's farming prior to the accident had not been very lucrative. He had been able to do anything required to be done on the farm before his injury, but the farm income was not sufficient for his needs. The evidence indicates that it had been necessary for him to do other work to supplement his earnings on the farm. After his injury there was much of the work which he could not do at all, and that which he did caused pain and discomfort. It was, therefore, necessary to hire others to do most of the farm work. He testified that he had tried farming both in working on his own farm and in doing farm work for others, and had found that he could not do it because of his injuries. At the time of his injury he was earning $65.00 per week from his butane truck job. Although his farming was not very lucrative even before the accident it was less thereafter because he had to hire so much help. There can be no question but that the evidence shows a general and permanent impairment of Ewell Smith's capacity to earn money on the farm and in any kind of work involving manual labor such as farming, driving a truck or any other kind of manual labor. We overrule appellants' contention in their 18th point that there was no evidence showing that Ewell D. Smith has any diminished earning capacity, or that he will have in the future.

Dr. Conradt testified that he first saw Smith in the Hospital at Terrell when he treated him for shock and burns; that Smith was given morphine and a dressing was applied to the burned areas. The doctor testified that in spite of the narcotics Smith continued to have pain. He stated that he had examined Smith at the time of the trial and that Smith's face was quite red, that he had lost a portion of his left ear and had a lesion below his left eye; that he had scarring on the back part of his wrist and an extensive scar in the area of his back where he was burned; that he had a drawing or contraction around his mouth; that based upon his examination, objectively, Smith would have pain to his

face if exposed to heat or cold; that he would have pain in the area of the scar on his back in any activities requiring stooping, carrying or lifting and that such conditions were permanent.

■ Even though Ewell Smith has sustained considerable loss of earning capacity and has and will suffer extreme pain and suffering, in our opinion, appellants' contention that the $175,000.00 award of damages to appellee is grossly excessive and that the court erred in not granting a remittitur is well taken. The loss of earning from the farm is without definite support in the evidence. However, a loss of earnings of $65.00 per week during the period prior to the trial would amount to about $15,000.00. Since appellee Smith at the time of the trial had a life expectancy of 31.88 years the total amount for loss of such future earnings would show more than $107,000.00. The present cash value of such future earnings should amount to about $42,000.00, and this does not include damages for the pain and discomfort he suffered up to the time of the trial, or that which the evidence indicates he will suffer in the future. Under the evidence there can be no question but that Ewell Smith received a terrible injury and that his injuries are permanent. The evidence would support an award to him in the sum of $114,000.00, but in our opinion any amount in addition thereto is excessive and cannot be permitted to stand.

It is contended in appellants' 15th and 16th points that the court erred in not granting a new trial because the award of damages to appellee, Margaret Griggs Smith, in the sum of $88,000.00 on account of the death of her husband, John M. Smith, was grossly excessive, or in the alternative in not granting a remittitur down to $15,-000.00, and that the court erred in not granting a new trial because the findings of damages in favor of the minor plaintiffs, Gloria Jeanette Smith, Shirley Kay Smith and Beverly Johnette Smith in the sum of $35,000.00 each because of the death of their father, John M. Smith, was grossly excessive, or in the alternative in not granting a remittitur down to $6,000.00 each.

■ The evidence shows that John M. Smith, prior to the time of his death, was earning a little over $300.00 per month and that he had a normal life expectancy of 37.74 years. Damages recovered under the wrongful death statute are compensatory and are to be estimated on present value of anticipated benefits. John M. Smith's earnings during the entire period of his life expectancy on the basis of $300.00 per month would have been, had he lived, approximately $137,000.00. The present cash value of such earnings would amount to about $45,000.00. As indicated in the court's charge to the jury it was also proper to take into consideration the pecuniary value to Mrs. Smith of the counsel, protection and service of her husband and the pecuniary value to each of the said minor children of the care, moral advice, education and training which such children would in reasonable probability have received from their father had he lived. The evidence in our opinion considered on the basis of the present value of anticipated benefits to the parties would support an award to appellee, Margaret Griggs Smith, in the sum of $60,000.00 and an award to the minor daughters in the sum of $12,000.00 each. Any amount in addition to that stated would, in our opinion, be excessive.

■ Appellants contend in their 17th point that the court erred in refusing to submit only one issue as to the amount of damages sustained as a result of the death of John M. Smith, and in not then instructing the jury to apportion said single amount of damages between the various beneficiaries and in submitting over appellants' objection separate issues inquiring about the damages to each of the beneficiaries, the widow and three children. The point is not well taken and is overruled.

Appellants' 3rd, 4th, 5th, 6th and 7th points complain of the action of the court in refusing to allow highway patrolman

James Barton, who investigated the accident, to testify concerning statements made by the bus driver, Millard Lee, a few minutes after the accident. Appellants contend that this evidence is admissible under the res gestae rule and also under the rule that it is an admission by the bus driver against the interest of himself and his employer. Neither the bus driver nor his employer are parties to this appeal. We, therefore, confine our consideration to the question of whether the statements in question were admissible as res gestae. The statements of the bus driver were in substance that just prior to the accident he was trying to pass the Duncan car on the right, and in doing so hit the side rail, glanced off and struck the Duncan car and then had a head-on collision with the butane truck.

The majority is of the opinion and hold that such statements were not admissible as res gestae and that the court did not err in excluding them. The writer is unable to agree with this holding.

The evidence indicates that patrolman Barton arrived at the scene of the collision about twenty or thirty minutes after it occurred; that the first people he saw after he got there were the colored passengers in the bus; that he asked them who was driving the bus, and Millard Lee answered that he was the driver; that he talked to Lee and asked him what happened; that Lee was calm and acted like he knew what he was talking about and voluntarily made the statement that he was driving the bus involved in the collision; that he was travelling west on the "improved shoulder" of the highway and was passing Mrs. Duncan's automobile on the right; that he saw he was coming upon a bridge and applied his brakes but didn't have enough air pressure built up and couldn't stop; that he hit the bridge, then hit Mrs. Duncan's car and then went across the road and hit the truck. In the writer's opinion the statement to the highway patrolman by Millard Lee was part of the res gestae and was admissible. It is well recognized that statements or acts of persons who participate in, or witness, the main or principal event may be admissible as part of the res gestae. 32 C.J.S. Evidence § 410, p. 24. There appears to be no hard and fast rule for determining the admissibility for such statements or acts but it is held that in determining what acts or declarations are part of the res gestae each case must be considered on its own particular facts. In 24 Tex.Jur.2d pages 102, 103 and 104, the material considerations concerning the admissibility of such testimony are stated as follows:

"Broadly speaking, all acts and declarations of the parties are part of the res gestae if they are part of the main transaction under consideration or if they accompany the main transaction and tend to explain it, as by throwing light on the motives and intentions of the parties. Again, acts and declarations are also generally part of the res gestae if, although not accompanying the main transaction, they spring out of it, tend to explain it, are voluntary and spontaneous, and are made so close in time to the main transaction, or under such circumstances, as to exclude any idea of premeditation and design. The fact that a statement or declaration is made in reply to a nonleading question does not render it inadmissible under the rule."

The following cases support the above stated general principles and their application to the instant case: Harris v. Allison, Tex.Civ.App., 11 S.W.2d 821, (Error Dis.); Southwestern Freight Lines v. McConnell, Tex.Civ.App., 269 S.W.2d 427, (Error Ref. N.R.E.); Beck v. Wahlgren, Tex.Civ.App., 87 S.W.2d 890, (No Writ History); Carrick v. Hedrick, Tex.Civ.App., 351 S.W.2d 659, (No Writ History); Dallas Ry. & Terminal Co. v. Burns, Tex.Civ.App., 60 S.W.2d 801, (No Writ History); Keystone-Fleming Transport, Inc., Tex.Civ.App., v. City of Tahoka, 315 S.W.2d 656, (Ref. N.R.E.); International & G. N. R. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039; Rowe v. Liles, Tex.Civ.App., 226 S.W.2d 253, (Writ Ref.).

The tendency has been to extend rather than to narrow the matters which may be admissible under res gestae. 32 C.J.S. Evidence § 403, p. 22; Evans v. McKay, Tex.Civ.App., 212 S.W. 680; Wetherbee v. Safety Casualty Co., 5 Cir., 219 F. 274.

The cases indicate that to be admissible as res gestae a declaration must be spontaneous and while under the influence of the transaction. It is said that "res gestae evidence is not the witness speaking but the transaction voicing itself." Knapik v. Edison Bros., Tex.Civ.App., 313 S.W.2d 335, (Writ Ref.). A narrating of past events, as where a statement is made in answer to a question is ordinarily not admissible as res gestae, but the circumstances may be such that a statement will be considered spontaneous and admissible even though in answer to a question. Tullos v. Texas Pipe Line Company, Tex.Civ.App., 145 S.W.2d 267, (Dis.Jdgm.Cor.); Davis Transport, Inc. v. Bolstad, Tex.Civ.App., 295 S.W.2d 941; 32 C.J.S. Evidence § 420, p. 53.

An important consideration in the matter of spontaneity is the question of whether the statement is self-serving or inculpatory. A self-serving statement will be carefully scrutinized while a statement against the apparent interest of the declarant will be more readily received. Martin v. City of Corsicana, Tex.Civ.App., 130 S.W.2d 405, (Dis.Jdgm.Cor.); 32 C.J.S. Evidence § 419, pp. 52, 53.

Another somewhat similar consideration is whether the circumstances under which the statement is made tend to exclude any idea of premeditation or design. In 32 C.J.S. Evidence § 417, on page 46 it is stated that:

"The test has also been declared to be whether the statement was made under such circumstances of physical shock or nervous excitement as to preclude the likelihood of reflection and fabrication."

Also see Coleman v. Cook, Tex.Civ.App., 195 S.W.2d 1020 and cases cited therein. The lapse of time between the accident and the declaration is also a matter for consideration.

An examination of the statements made by the bus driver Lee to the patrolman and the material circumstances bearing upon their admissibility as res gestae reveals the following important controlling facts:

The declarations by Lee although in answer to a question were voluntary. The portion of Lee's statement material to the liability of the Duncans was against the apparent interest of Lee. The statements were made not more than thirty minutes after the accident. Numerous cases have held admissible declarations more distant in time from the main event than the declarations here involved. The declarations by Lee were made while he was still at the scene of the tragedy. The bridge was still blocked by the vehicles involved in the accident. The bus which Lee had been driving and the butane truck were still burning. The driver of the truck was still entrapped in that burning vehicle and was then being or had already been burned alive. It was stated by the patrolman that Lee was apparently calm when he declared that he was passing the Duncan car at the time of the accident. It is noted, however, that the declaration was made at the time and under the circumstances as above set out. Lee was without doubt under the influence of the shock and solemnity which was bound to prevail in the presence of such a tragedy. These circumstances preclude the likelihood of reflection and fabrication. The time, the nature and the unreflected character of Lee's statements indicate spontaneity and trustworthiness. The statements were admissible as res gestae and the court erred in not so holding.

The writer cannot agree with appellees' contention that Isaacs v. Plains Transport Company, Tex., 367 S.W.2d 152, supports their contention that the statements of the driver of the bus are not admissible as res gestae. In that case that "statements of the driver were pure conclusions" and it was held that under the circumstances such a

statement was not admissible (against the driver's employer) even though made immediately after the collision. In the instant case the statements of the bus driver were not in the nature of an opinion or conclusion but were statements of fact and were admissible as res gestae.

The writer is also unable to agree with appellees' contention that any error of the court in excluding the proffered res gestae testimony was harmless within the contemplation of Rule 434, Vernon's Texas Rules Civil Procedure. It is true, as appellees contend, that there was other testimony to the effect that Millard Lee, the driver of the bus, was attempting to pass Mrs. Duncan's car at the time, rather than that Mrs. Duncan was passing the bus. However, under the circumstances, the testimony of the patrolman concerning the statements by Lee was such that if it had been presented to the jury it probably would have affected the verdict. An admission by one of the parties to an accident concerning the existence of facts which would show that he was the negligent one necessarily carries great weight. The existence of negligence on the part of Mrs. Duncan proximately causing the accident hinges principally upon the question of whether or not Mrs. Duncan was passing the bus. The answer to that question bears upon and would unquestionably affect a jury's determination of the question of whether Mrs. Duncan was keeping a proper lookout. It would also bear upon and affect the determination of the questions of whether the facts that Mrs. Duncan failed to apply her brakes and the speed at which she was operating her car under the circumstances constituted negligence, and whether or not the fact that she drove her car to the left of the center of the highway would or could be a proximate cause of the collision. It thus appears that the excluded testimony has an important bearing upon every finding of the jury concerning negligence by Mrs. Duncan proximately causing the accident. See Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806. In this condition of the record as a whole the

writer is of the opinion that if the testimony in question had not been excluded, the jury very probably would not have found that Mrs. Duncan was attempting to pass the bus and that she was guilty of the other alleged acts of negligence and that such acts were proximate causes of the collision. The exclusion of the testimony was therefore reasonably calculated to cause and probably did cause the rendition of an improper judgment, and requires a reversal of the judgment under Rules 434 and 503, V.T.R. C.P. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210; Missouri-Kansas-Texas Railway Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931.

For the reasons stated it is my opinion that the judgment should be reversed and the cause remanded for another trial.

GRISSOM, Chief Justice.

The foregoing opinion was written by Judge COLLINGS as the opinion of the court except on the question of admissibility of alleged res gestae statements. The majority agrees with his opinion except on the question of admissibility of the statements of Millard Harvey Lee. The majority opinion on that question is as follows:

■ Appellants contend the judgment must be reversed because of the refusal of the court to admit the testimony of an investigating officer as to statements of the negro bus driver as to the cause of the accident. To be admissible as res gestae statements they must have been made under circumstances raising a reasonable presumption that they were the spontaneous utterances of thoughts created by or springing out of the transaction itself and exclude the idea that they were the result of premeditation or design. Pacific Mutual Life Insurance Company of California v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709, 712.

■ In passing upon the admissibility of a statement offered as a part of the res gestae the trial court has considerable

discretion. Truck Insurance Exchange v. Michling, Tex., 364 S.W.2d 172, 174; Skillern & Sons, Inc. v. Rosen, Tex., 359 S.W.2d 298; 56 A.L.R.2d 374, 378. Our Supreme Court has held that a party who seeks to have hearsay declarations admitted as an exception to the general rule must "clearly" show that the declarations are within the exception. Skillern & Sons, Inc. v. Rosen, supra. Appellants had the burden of presenting a sufficient predicate showing the admissibility of the bus driver's statements. When such evidence has been excluded, the burden upon an appellant to show reversible error is not discharged by showing that the circumstances were such that the declarant could have been so affected by them as to make his statements spontaneous utterance of facts springing out of the accident itself. He must show that the declarant was so affected. Such a conclusion is not required by evidence that the declarant "advised" the witness of certain things; that he was "calm" and knew what he was doing. Since a sufficient predicate for its introduction was not presented, we cannot hold that the court erred in excluding it. Pacific Mutual Life Insurance Company of California v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709, 712.

Unquestionably, the statement of the bus driver that he was attempting to pass Mrs. Duncan; that he observed that the highway narrowed as he approached the bridge; that he applied his brakes but did not stop because his brakes failed to work, causing him to strike the guard rail, bounce off it and strike the rear end of the Duncan car and then have a head-on collision with the Smith truck on its right hand side of the road, were of importance to the defense of the Duncans, the bus driver and his employer. His statement that he failed to stop before the collision because his brakes failed to work was exculpatory. But, the substance of the officer's proffered testimony as to the statement by the bus driver pertinent to the question of its admissibility is that the bus driver was standing with his passengers a safe distance from the fire, at a time which could have been thirty minutes or more after the collision; that the officer asked who was driving the bus and Lee stated that he was; that the officer asked him how the accident occurred and Lee "advised" him of the matters outlined above and that the bus driver was "calm" and seemed to know what he was talking about. Certainly, this does not compel the conclusion that Lee's statements were the spontaneous utterances of facts created by or springing out of the accident itself. Therefore, they do not show that the court abused its discretion in excluding them. They do not necessarily show that the statements attributed to him were made while the bus driver was laboring under stress or excitement. On the contrary, they tend to support the conclusion that they were not spontaneous exclamations but a mere narrative of a past event made when the declarant's condition was such that it need not be concluded that it was the transaction itself speaking. "Spontaneity is a necessary and controlling factor." Pacific Mutual Life Insurance Company of California v. Schlakzug, 143 Tex. 264, 183 S.W. 2d 709, 712. We conclude that appellants have not discharged the burden of presenting a sufficient predicate to require the admission of the bus driver's statements; that they did not clearly show that the proffered declarations came within the exception; and, having failed to do so, we cannot hold that the court erred in refusing to admit them. We hold that it is not shown that the court abused its discretion in excluding such testimony. Skillern & Sons, Inc. v. Rosen, Tex., 359 S.W.2d 298, 305; The Texas & Pacific Railway Company v. Porter, Tex. Civ.App., 360 S.W.2d 568, 571; Petroleum Casualty Company v. Harlan, Tex.Civ.App., 352 S.W.2d 342, 345.

The judgment will be affirmed if the remittiturs indicated are promptly filed. Otherwise, the judgment will be reversed and the case remanded. Affirmed conditionally.