PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA
V. MOSES SCHLAKZUG.

No. A-266. Decided November 22, 1944.
Rehearing overruled December 20, 1944.
(183 S. W., 2d Series, 709.)

Homer Mabry, F. L. Andrews, Andrews, Kelley, Kurth & Campbell, all of Houston, for petitioner.

E. R. Campbell, of Houston, for respondent.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was instituted in the District Court of Harris County, Texas, by Moses Schlakzug, hereinafter called plaintiff, against Pacific Mutual Life Insurance Company of California, hereinafter called insurance company, to recover on an accident insurance policy which insured one Aaron Schlakzug Slater, hereinafter called the insured, against loss of life "as hereinafter set forth" resulting from "bodily injuries effected solely through external, violent and accidental means." The full extent of accidental coverage will be more fully stated later. The policy was for $3,000.00. Trial in the district court without the intervention of a jury resulted in a judgment for the plaintiff. This judgment was affirmed by the Galveston Court of Civil Appeals. 180 S. W. (2d) 980. The insurance company brings error.

The case in the district court was tried on the theory that the insured intentionally pulled or plucked a hair from one of his nostrils; that the pulling of such hair produced a small wound or opening at the place from which it was pulled; that a pyogenic infection occurred simultaneously with the production of such wound and as a result thereof; and that the insured died as a result of such infection.

The insurance company contends that if the insured died under and as a result of the circumstances just above detailed, the insurance contract made the basis of this suit did not insure against such death. In order to decide this question we must construe the following provisions of the insurance contract:

"THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA * * * HEREBY INSURES Aaron Schlakzug Slater * * * AGAINST (1) Loss of life, limbs or sight, as hereinafter set forth, resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means; * * *

* * * * * * * *

"ADDITIONAL PROVISIONS.

"Exceptions. 21. * * * The Accident Benefits of this Policy do not cover loss of life, or disability, caused or contributed to, directly or indirectly, in whole or in part by * * * bacterial in-

fection (*except Pyogenic infection which shall occur simultaneously with and through 'an accidental cut or wound."* (Emphasis ours.)

■ A reading of the provision of this insurance contract first above quoted will disclose that it insures the insured against loss of life, "as hereinafter set forth, resulting directly * * * from bodily injuries effected solely through external, violent and accidental means; * *." If the decision of this case depended alone on this provision of the policy, it is the settled law of this State that it would cover the death of this insured if produced in the manner and as the result of infection, even though the wound through which the infection entered the body was not iself an accident. International Travelers' Assn. v. Francis, 119 Texas 1, 23 S. W. (2d) 282.

In the case just above cited it is held that where normal and ordinary means are employed in a usual manner, instead of producing the usual, normal, and expected result, causes the happening of an altogether different, unusual, and fatal result, the result is an accident within the meaning of an accident policy which insures against death caused by "external, violent and accidental means." It is evident that if the insured merely plucked a hair from his nose, he did a thing which would very rarely produce an injury of any consequence, and more rarely would produce death by infection. This is the effect of the expert medical testimony in this record. We therefore conclude that the plaintiff is entitled to recover in this cause, unless the provision of this insurance policy second above prohibits or denies such recovery.

■ An examination of the provision of this policy second above quoted will disclose that it comes under the heading *"Exceptions"* and expressly limits the coverage of the provision first quoted. Under the plain language of the second quoted provision, death produced by bacterial infection is not insured against "(except Pyogenic infection which shall occur simultaneously with and through an accidental cut or wound.)" Plainly, when we consider the two above-quoted provisions of this policy together, it did not insure this insured against accidental death produced by bacterial infection introduced into the body through a cut or wound, unless the cut or wound itself was produced by accident. International Travelers' Assn. v. Francis, supra; Northam v. Metropolitan Life Ins. Co., 231 Ala. 105., 163 So. 635, 111 A. L. R. 622. This is the plain language of the contract, and since all rights here involved must arise out of and be

determined by such instrument, we are compelled to follow and enforce it.

■ The insurance company contends that the evidence in this record touching the manner in which the insured received the wound in his nose, if it proves anything, (we will discuss and decide that matter later in this opinion), proves that such wound was intentionally produced by the insured, and therefore was not an accident. In regard to this matter, if there is any evidence in this record showing or tending to show how the original wound or injury to the insured's nose occurred, such evidence shows that insured intentionally plucked a hair from one of his nostrils, and that such operation left a small opening or wound at the point or place where such hair was growing or was located. The expert medical testimony is to the effect that when a growing hair is plucked from the nose, the operation may leave a small opening or wound at the point from which the hair was pulled, but such testimony also shows, in effect, that such operation does not ordinarily leave a wound of any consequence, or one that produces any serious or fatal results. The insured intentionally pulled the hair. In spite of this, we think the wound may have been an accidental one, when we consider this case from the standpoint of the insured. He was not an expert on such matters, and if he, as an ordinary person, did not know or anticipate that the pulling of a hair from his nose would produce a wound at the place or point from which it was pulled, then we think that the wound so produced was an accidental wound, in so far as he was concerned. Stated in another way, if the insured did not know or anticipate that the plucking of a hair from his nose would produce a wound therein, then as to him the wound so produced would be unexpected and unforseen, and therefore would be an accidental wound. International Travelers' Assn. v. Francis, supra.

■ The insurance company contends that there is no competent evidence contained in this record showing, or tending to show, when or how the insured sustained the wound in his nose, through which the infection which caused his death entered his body. Before deciding this question we deem it proper to first make a comprehensive statement of the evidence bearing thereon admitted at the trial in the district court.

Charlie Slater, a witness for the plaintiff, in substance testified: That he is the brother of the insured, and the son of the plaintiff; that at the times here involved he and the insured both lived with the plaintiff, in the plaintiff's home; that he and

the insured had separate bedrooms; that he and the insured ate together at their father's home, at the same table; that on the morning of January 24, 1940, he had breakfast with the insured; that at such time the insured came downstairs, and he noticed that his nose was swollen, and asked him what was the matter, or what had happened to him; that insured replied that he had pulled a "stinking little hair" out of his nose; that insured pointed to the right side of his nose as the place from which he had pulled the hair; that these statements were made by the insured at breakfast time on the morning of the 24th; that at such time insured said that he had pulled the hair from his nose "yesterday," which would be January 23, 1940; that insured did not say at what time of the day he pulled the hair from his nose on the 23rd; that he saw insured day by day and did not notice any infection on his face or nose prior to the morning of the 24th; that up to the morning of the 24th insured seemed in good spirits and in good health; that insured went to the hospital on the 25th; that he saw insured on that day; that on that day his face was terribly swollen and his eye turning blue.

Stell Phelps, a witness for the plaintiff, testified: That she worked for the plaintiff and the boys that lived there with him, at the times here involved; that she had worked for them for several years; that she knew the insured; that she remembered when he went to the hospital and died; that on January 24, 1940, the day before insured went to the hospital, and when he was coming down the steps to breakfast, she saw that the right side of his face was swollen and "right under there it was blue"; that she said to insured "what is the matter with you?"; that insured said he plucked a hair from his nostril; that she gave insured his meals; that she gave insured his supper on January 23rd, the day before, and there was nothing the matter with his face at that time, but that the next morning when he came to breakfast his face was swollen.

Dr. Thomas Freundlich testified, as a witness for the plaintiff: That he saw insured in the hospital on the 27th and 28th of January; that at such times insured was desperately sick from a very severe type of infection, originating in his nose and extending through his body; that at the times witness saw insured he was called in as a consultant to assist Dr. Logue; that at the time he saw insured his nose was so badly swollen that he could not tell where the primary focus of the infection was; that someone called insured's attention to the fact that witness was present, and insured opened his eyes, and said: "I am an awful sick man." and "this is what I got for pulling a hair out

of my nose." We gather from this witness' testimony that these statements must have been made on the 27th.

Dr. Lyle J. Logue, a witness for the plaintiff, testified: That insured died of an infection which originated in his nose, among the hairs thereof.

The opinion of the Court of Civil Appeals holds that the testimony of the witnesses Charlie Slater and Stella Phelps, to the effect that the insured told them that he had plucked a hair from his nose on the preceding day, was admissible as *res gestae*. The insurer presents this ruling as error in this Court. It is evident that if this testimony was not admissible as *res gestae*, then there is no evidence in this record showing, or tending to show, how insured received the wound through which infection entered his body. On the other hand, if such testimony was admissible, it furnishes some evidence showing how such wound originated. It is therefore evident that the judgments of the two lower courts must stand or fall on a decision of the question as to whether or not the testimony of these two witnesses comes within the *res gestae* rule.

No rule of evidence has given our courts more perplexity than has the *res gestae rule*. As applied to cases like this the rule itself is well defined, but its application to particular cases sometimes becomes very difficult. The rule as applied to this case is:

(a) All declarations or exclamations uttered by the parties to a transaction and which are contemporaneous with and accompany it and are calculated to throw light upon the motives and intentions of the parties are admissible as part of the *res gestae*. International & G. N. Ry. Co. v. Anderson, 82 Texas 516, 17 S. W. 1039, 27 Am. St. Rep. 902; City of Galveston v. Barbour, 62 Texas 172, 50 Am. Rep. 519.

(b) All declarations or exclamations which are made under circumstances which raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself and so soon thereafter as to exclude the presumption that they are the result of premeditation or design are admissible as *res. gestae*. International & G. N. Ry. Co. v. Anderson, supra; City of Galveston v. Barbour, supra; City of Houston v. Quinones, 142 Texas 282, 177 S. W. (2d) 259. The rule just stated, however, can not be applied so as to admit hearsay or self-serving declarations under the guise of *res gestae*. City of Houston v. Barbour, supra.

■ It is said in some of the cases that the application of the res gestae rule addressed itself largely to the discretion of the trial court. In our opinion the question as to whether or not evidence is admissible as *res gestae* is a law question which an appellate court has the same power to pass on that it has to pass on any other law question.

■ It is too plain to admit of debate that the declarations made by the insured to Charlie Slater and Stella Phelps, regarding how he received the injury to his nose, do not fall within the class of *res gestae* declarations set out under class (a), supra. This is evident because such declarations were not uttered contemporaneously with or accompanying the transaction by which insured plucked the hair from his nose.

We think it is equally as clear that the declartions made by the insured to Charlie Slater and Stella Phelps regarding how he received the injury to his nose can not be classed as *res gestae* under class (b), supra. This is evident because such testimony does not raise any reasonable presumption that such declarations were *spontaneous* utterances of thoughts created by or springing out of the transaction by which insured received his injury. Spontaneity is a necessary and controlling factor. At best the injury occurred on the evening of the preceding day. The operation of pulling the hair from the nose was a simple one, and we see nothing about it or its surroundings, as detailed by this record, that would justify a presumption that insured's statements made the next day were spontaneous utterances within the meaning of the *res gestae rule*. Such statements amounted to nothing more than a mere recitation or statement by the insured as to how a past event had been brought about. The record does not justify a reasonable presumption that insured labored under any spontaneous influence regarding the event detailed except his memory thereof. If this insured had not died, and we had a case wherein it became material to prove how he received the wound in his nose, the statement here involved would not be admissible as *res gestae*. Certainly the decision of the question as to whether or not such statements were *res gestae* does not depend on the after event of insured's death. They were either *res gestae* or not *res gestae* at the time they were uttered.

Of course, what we have said about the testimony of the witnesses Charlie Slater and Stella Phelps applies with greater force to the testimony of the witness Dr. Freundlich.

272

The judgments of the Court of Civil Appeals and district courts are both reversed, and this cause is remanded to the district court for a new trial.

Opinion delivered November 22, 1944.

Rehearing overruled December 20, 1944.