Mrs. Guy M. WETHERBEE, a widow, individually and as next friend for Lane Alan Wetherbee, a minor, Appellant,

v.

**SAFETY CASUALTY COMPANY,**
Appellee.

No. 14987.

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1955.

Jack G. Banner, Philip S. Kouri and Elmer H. Parish, Jones, Parish & Filmore, Kouri & Banner, Wichita Falls, Tex., for appellant.

Frank C. Bolton, Jr., Charles B. Wallace and Earl A. Brown, Dallas, Tex., Allan D. Montgomery, Nelson, Montgomery, Robertson & Sellers, Wichita Falls, Tex., for appellee.

Before HOLMES and TUTTLE, Circuit Judges, and ALLRED, District Judge.

ALLRED, District Judge.

This is an appeal from an order directing a verdict for defendant in an action under the Texas Workmen's Compensation Law[1] for the death of appellant's husband. The trial court directed the verdict because he found no testimony that Wetherbee did anything on the day of his alleged injury "while at work in the regular course of his employment that caused this injury or aggravated the injury that he had before he went to work on that day." The correctness of the directed verdict depends on whether a statement made by the deceased on the day in question that he didn't want any lunch, was sick and thought he had just ruptured himself kicking on a gasoline engine was admissible as res gestæ.

Wetherbee was employed by Magnolia Petroleum Company, the assured, as a pumper, on one of its leases. He had worked for the company about thirty years and lived on an adjoining lease about one-half mile away. The wells on the leases were powered by "old country type" gas engines with a round fly wheel. Occasionally they would get down and it was the pumper's duty to see that they were started again. Usually this was done with help but one man sometimes did it by standing on one of the spokes, throwing his weight on his left foot and pulling on the top spoke with his hands. On cold mornings this might have to be done two or three times, maybe more.

On the day of his alleged injury, December 10, 1952, Wetherbee fixed breakfast for his 19 year old son, who noticed nothing unusual about his condition.[2] He went to work about 9 o'clock in the morning and returned to the house between 12 and 12:30. According to Mrs. Wetherbee, he was very pale, looked very sick and was "all bent over and he could hardly get from the car into the house;" he pointed to a swollen area, above the belt line and under his ribs, and complained of pain in that area. Mrs. Wetherbee felt of it and heard a sound like water gurgling. She had never seen that mass or heard the gurgling before. According to Jim Wetherbee, an older son, deceased looked sick, was "rather gray looking and trembling" and there was a rather pronounced protrusion between his belt line and his chest cavity. His appearance differed from what it was the day before. This witness had never see that protrusion before. Wetherbee ate nothing but drank a cup of coffee then went outside and vomited. He was at the house no more than half an hour.

■ It was during this half hour, when he came inside the house, that the

---

1. Article 8306 et seq., Vernon's Texas Civil Statutes.

2. Mrs. Wetherbee had been up all night with her granddaughter and did not remember whether she saw him or not.

conversation occurred which appellant claims was res gestæ. The following transpired while Jim Wetherbee was on the stand:

"Q. Did anything unusual happen on that day? A. Well, some time during the lunch hour my dad came in from work and he looked sick, he came in and sat down at the table and told my mother that he didn't want anything for lunch, that he was sick, and he thought that he had just ruptured himself kicking on the engines.

"Mr. Bolton: We object to that.

"The Court: How he appeared you have a right to tell, and that is all.

"Mr. Parish: We think it is posibly admissible under the—

"The Court: I have already ruled, Gentlemen.

"Mr. Parish: We except."

Appellant later sought to prove the same conversation by Mrs. Wetherbee but the trial court interposed: "I am not going to admit that testimony." [3]

Wetherbee returned to work and around 3 o'clock p. m., he "looked like he didn't feel good" to Jim Morrison and he so told him. The next day Morrison noticed where someone had vomited near the "dog house" where he had seen Wetherbee the afternoon before. Deceased returned home from work about six o'clock on the 10th, looking pale and sick, complaining of pain in his abdominal area, his chest, feet and legs. Jim Wetherbee felt of the protrusion on his stomach, where it was sticking out at least two or three inches. Deceased was given rest tablets and slept most all the next day but complained of pain and cold feet when awake. He was taken to the hospital on December 12th, and died there on December 17th. Medical testimony, from appellant's standpoint, was that he had suffered from a ruptured aortic aneuryism that put an added strain on his heart, that he died from heart failure and that his condition could have been aggravated by kicking off one of the motors, assuming that he did.

The foregoing is a summary of the case reviewed, as it must be, most favorably from appellant's standpoint. There are a number of facts argued by appellee to negative most, if not all, of the points relied upon by appellant; however, they are more appropriate for jury argument on the merits. The sole question here is, was the rejected testimony as to Wetherbee's statement during the noon hour res gestæ? He worked alone on the lease that morning.[4] No witness saw him kick off the motor or strain himself in any way. Circumstances strongly indicate the engines may not have been down on the day in question. On the other hand, if the statement was admissible, it would have been sufficient to take the case to the jury.

The question is very close. The cases [5] cited by counsel for both sides generally

3. Appellee urges that appellant cannot complain of the trial court's action because she did not make an offer of proof, as required by Rule 43(c), Federal Rules of Civil Procedure, 28 U.S.C.A. We think the foregoing shows a sufficient offer of proof. In addition, when the court observed that there was no evidence that deceased kicked off any motors that day and inquired whether counsel was assuming that, counsel said: "I am going to be frank with the Court, the only way I can prove it is by the wife's testimony and what the husband said immediately when he came home for lunch." No one was or is left in any doubt as to what appellant offered to prove.

4. While two witnesses testified they played pitch with Wetherbee and Morrison during the noon hour and he made no complaint as to an injury, their testimony was confused and Morrison did not remember it.

5. Appellant cites, among others, Pilkenton v. Gulf, C. & S. F. Ry. Co., 70 Tex. 226, 7 S.W. 805; Texas Employers Insurance Ass'n v. Shifflette, Tex.Civ.App., 91 S.W. 2d 787; Pacific Mutual Life Ins. Co. v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709; Dallas Hotel Co. v. Fox, Tex.Civ.App., 196 S.W. 647, affirmed 111 Tex. 461, 240 S.W. 517; Norwich Union Indemnity Co. v. Smith, Tex.Civ.App., 3 S.W.2d 120; Atkinson v. U. S. Fidelity & Guaranty

enunciate the same principles and apply them to varying facts. In Halleck v. Hartford Accident & Indemnity Co., 75 F.2d 800, 803, this court said:

"(4) But it is claimed that the statement was made in such close connection with the occurrence to which it referred as to be not mere narrative but a part of the occurrence, of the res gestae. Things said during an occurrence and as a part of it, no matter what the speaker's interest be or whether or not he has since died, are provable as facts, 'verbal acts'; and *spontaneous utterances about the occurrence shortly afterwards if made under such pain or excitement or other circumstances as fairly exclude afterthought or design are received, because such circumstances prolong the influence of the occurrence itself.* The point is not so much the lapse of time or change of place as the continuance of a situation which insures that what is said is a spontaneous reaction to the occurrence rather than an independent action of the speaker's will. * * *" (Emphasis supplied.)

In City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 262, the Supreme Court of Texas said:

"No rigid rule respecting the admissibility of evidence as a part of the res gestæ has been announced. The general rule relating to this question is that res gestæ evidence is not the witness speaking but the transaction voicing itself. 17 Tex. Jur. pp. 614–630, §§ 257–264; 20 Am.Jur., p. 553; 32 C.J.S., Evidence, § 417, page 45. In determining whether evidence is admissible, each case must be tested by its own facts; and if upon a fair analysis a statement after the event

does not appear to be a continuation of such event, it cannot be res gestæ, even though made near the time of the occurrence. Statements must be either a part of the transaction or made under such circumstances as to raise a reasonable presumption that they are spontaneous utterances of facts arising out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design. If they are not in their nature a part of the occurrence, they do not constitute a part of the res gestæ, and are inadmissible."

Again in Pacific Mutual Life Ins. Co. of California v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709, 712, that court said:

"(a) All declarations or exclamations uttered by the parties to a transaction and which are contemporaneous with and accompanying it and are calculated to throw light upon the motives and intentions of the parties are admissible as part of the res gestæ. International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 27 Am.St.Rep. 902; City of Galveston v. Barbour, 62 Tex. 172, 50 Am.Rep. 519.

"(b) All declarations or exclamations which are made under circumstances which raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself and so soon thereafter as to exclude the presumption that they are the result of premeditation or design are admissible as res gestæ. International & G. N. Ry. Co. v. Anderson, supra; City of Galveston v. Barbour, supra; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. The rule just stated, however, can not be applied

Co., Tex.Civ.App., 235 S.W.2d 509; Texas Employers Ins. Ass'n v. Wade, Tex. Civ.App., 197 S.W.2d 203, affirmed 150 Tex. 557, 244 S.W.2d 197.

Appellee cites, among others, Halleck v. Hartford Accident & Indemnity Co.,

5 Cir., 75 F.2d 800; Bonner v. Texas Co., 5 Cir., 89 F.2d 291; Beck v. National Surety Corp., 5 Cir., 171 F.2d 862; Standard Accident & Ins. Co. v. Terrell, 5 Cir., 180 F.2d 1; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259.

so as to admit hearsay or self-serving declarations under the guise of res gestæ. City of Houston v. Quinones, supra."

In all of these cases, cited by appellee, there was no evidence as to "spontaneous utterances about the occurrence shortly afterward * * * made under such pain or excitement or other circumstances as fairly exclude afterthought or design", or circumstances which "prolong the influence of the occurrence itself"; or spontaneous utterances "created by or springing out of the transaction itself and so soon thereafter as to exclude the presumption that they are the result of premeditation or design." Here, Wetherbee had been gone from home only a little over three hours and had just returned from work. He was pale, apparently very sick, and in great pain, all bent over and could hardly get from the car into the house. He pointed out the area of his suffering which was evident to his wife and son. After he returned from work in the evening, he continued very ill, practically in a coma until he died. Meantime, spontaneously, not in response to questions, he had said he was sick and thought he had *just* ruptured himself kicking on the engines. It hardly can be contended that his statement, under these circumstances, was an afterthought. Rather, if the wife and son are to be believed, the pain and suffering, under which he was speaking, "prolonged the influence of the event itself." His statement that he thought he had just ruptured himself was a conclusion as to the *effect* of his kicking on the engines but not as to the actual *act* of kicking on the engines. Suppose he had merely said he thought he had hurt or strained himself kicking on the engines? That would have been to some extent a conclusion, but not as to the main fact of injury. The court could have safeguarded the matter in this respect by instructing the jury that they should not consider his conclusion as to the nature, extent or effect of his alleged injury.

■■ Some of the decisions of the Texas Courts of Civil Appeals indicate that the application of the res gestæ rule addresses itself largely to the discretion of the trial court but the Texas Supreme Court has held that the question is one of law. Pacific Mutual Life Ins. Co. v. Schlakzug, supra; Guerrero v. Wright, 225 S.W.2d 609, 613. Under Rule 43(a), Federal Rules of Civil Procedure, the rule, federal or state, which favors the reception of evidence governs. The modern tendency of the cases is to extend, not limit, application of the res gestæ rule. Texas Employers Ins. Ass'n v. Shifflette, 91 S.W.2d 787, 790. The facts here are very close to those in Texas Employers Ins. Ass'n v. Noel, 269 S.W.2d 835, the most recent Texas case admitting evidence of this type. Cf. Travellers' Insurance Company v. Mosley, 8 Wall. 397, 75 U.S. 397, 19 L.Ed. 437. We believe the rejected evidence should have been admitted.

Reversed.