**PETROLEUM CASUALTY COMPANY,**
**Appellant,**

v.

**Sandra HARLAN et al., Appellees.**

**No. 3660.**

Court of Civil Appeals of Texas.

Eastland.

Nov. 24, 1961.

Rehearing Denied Jan. 5, 1962.

Hinds & Meyer, Frank L. Heard, Jr., Houston, for appellant.

Burl E. Eastup and Gordon J. Kroll, Houston, for appellee.

GRISSOM, Chief Justice.

This is a workmen's compensation case. George B. Harlan was employed by Humble Pipeline Company. Petroleum Casualty Company was said employer's insurance carrier. A jury found that Mr. Harlan sustained an injury while he was in the course of his employment by Humble. Judgment was rendered for the plaintiffs, Harlan's widow and daughter, for death benefits under the compensation law. The insurance carrier has appealed.

Appellant contends, among other things, that there was no evidence Harlan sustained the injury while he was in the course of his employment and, in the alternative, that a finding that he did is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. Appellant also says that the court erred in permitting Harlan's widow to testify that after Har-

lan returned home on June 11, he told her that he got a tick on him that day. Mrs. Harlan testified that when Harlan made that statement he was not sick; he was not excited; he was not in pain. Mrs. Harlan's testimony was simply to the effect that "shortly after" he came home Harlan casually said that he got a tick on him "today" and he wanted her to remove it. The next day, June 12th, he became violently sick, was taken to a hospital, and his ailment was diagnosed as Rocky Mountain spotted fever, which can be transmitted by a tick. He died on June 17th. The expert testimony is to the effect that the shortest period within which such a fever can develop is three days and that the usual incubation period is five days. The record shows that Harlan had been working for Humble about six miles from his residence on a cleared spot surrounded by a fence; that he had been repairing heavy machinery; that there was no vegetation on the yard where he worked; that it was kept sprayed and was covered with crushed shell. The evidence shows that ticks abhor such conditions but thrive where there is vegetation. Mr. Harlan had as his hobby the raising, caring for and fighting of gamecocks. Mrs. Harlan testified that on Sunday, June 7, her husband carried some young roosters from his home to the home of a partner in Luling where they kept gamecocks; that usually on Saturdays and Sundays he visited the chickens that he kept at various places, worked with them, cleaned out the yards, and the like.

■ After careful consideration of the record and considerable research we readily agree with appellant that the finding that the tick got on Harlan while he was at work for Humble is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. However, if appellant is correct in its contention that there is no evidence that the tick got on Harlan while he was at work for Humble appellant is entitled to have the judgment rendered. Before deciding the

question of no evidence, we deem it advisable to decide whether the testimony of Mrs. Harlan that "shortly after" Harlan came home on June 11th he told her that he got a tick on him "today" was admissible.

■ As stated, Mrs. Harlan's testimony is that when he made the statement he was not sick; he was not in pain; he was not excited. Apparently Harlan casually told her that he got the tick on him and wanted her to remove it. She said that when she removed the tick, in the afternoon of June 11th, it was filled with blood, the spot where the tick was removed was red and irritated and the flesh was hard. The evidence shows that such conditions do not normally exist when a tick has been on a person for so short a time; that a tick may be on a person several days before such conditions exist and before irritation would attract the attention of a man to the fact that a tick was on him. The question of the admissibility of Mrs. Harlan's said testimony cannot be readily determined from general statements of exceptions to the hearsay rule applicable to res gestae statements. Appellee cites only Texas Employers Insurance Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787 (Writ Dis.), and Texas Employers Insurance Ass'n v. Wade, Tex.Civ.App., 236 S.W.2d 836 (Reversed and judgment of the trial court affirmed 150 Tex. 557, 244 S.W.2d 197, 201) as authorities sustaining the admission of Mrs. Harlan's testimony that her husband said, "I got a tick on me today." In the Shifflette case testimony of the widow of an employee as to what he said and did when he arrived home was admitted under the following circumstances. He was suffering from a heart disease known as myocarditis which prevents taking violent exercise. He climbed from the first floor of his place of employment to the fourth floor in the morning. He left the mill about 1:00 p. m. in his automobile and arrived at his home about 1:15 p. m. His custom was to park in front of his residence. This day he drove into the driveway and stopped just opposite the window where his wife was sitting. She immediately went to his car and found her husband, pale, his features drawn, gasping for breath and apparently suffering great pain. She asked him what was wrong and he replied " 'My heart,' and he says, 'I had to rush up those steps and I fell and it hurt me.' " The wife assisted her husband out of the car, into the house and onto a bed, where he continued to gasp for breath and apparently to suffer great pain. This fact situation is not comparable to the instant case.

The decision in point in the Wade case is clearly shown from the following quotation from the Supreme Court's opinion:

"We are still of the opinion reached on granting the writ of error, that the reversal cannot be supported on the ground, rejected below, that the trial court erred in admitting as part of the res gestae the declarations of Mr. Wade proved by the witnesses, Muesse and Gormey. Conceding that Mr. Wade was 'ill' at the plant during the morning of April 12th, such would not, under the peculiar facts of this case, necessarily make his declarations of that afternoon the narration of a past event occurring in the morning. See Texas Law of Evidence, McCormick and Ray, § 433. Whatever the cause of his being unwell in the morning, if he had at a given moment in the afternoon said that he was then and there being overcome by the inhalation of gas, surely such declaration would be admissible evidence of an injury received from gas at that time, and this is substantially the evidence admitted. The situation is accordingly quite different from those involved in Pacific Mutual Life Ins. Co. [of California] v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709, and City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, in both of which there was no contention that the injury was received at or about the time of the .

declaration. Here the petitioners' case was not pitched on an injury received in the morning but rather on one occurring at some undetermined time during the work day, probably about the very time Mr. Wade, giving signs of illness, said 'This gas is about to get me.' "

We, of course, agree with the quoted statement. But, it has no application to the facts of this case. We think the following authorities compel the conclusion that Mrs. Harlan's testimony as to what her husband said was not admissible. In Pacific Mutual Life Insurance Company of California v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709, 712, the insured's death was caused by an infection in his nose. The Court admitted evidence that after his nose had become swollen insured stated that on the evening of the preceding day he caused the injury by pulling a hair from his nose. In holding that such statement was not admissible the court said:

"We think it is equally as clear that the declarations made by the insured to Charlie Slater and Stella Phelps regarding how he received the injury to his nose can not be classed as res gestae under class (b), supra. This is evident because such testimony does not raise any reasonable presumption that such declarations were spontaneous utterances of thoughts created by or springing out of the transaction by which insured received his injury. Spontaniety [sic] is a necessary and controlling factor. At best the injury occurred on the evening of the preceding day. The operation of pulling the hair from the nose was a simple one, and we see nothing about it or its surroundings, as detailed by this record, that would justify a presumption that insured's statements made the next day were spontaneous utterances within the meaning of the res gestae rule. Such statements amounted to nothing more than a mere recitation or statement by the insured as to how a past event had been brought about. The record does not justify a reasonable presumption that insured labored under any spontaneous influence regarding the event detailed except his memory thereof. If this insured had not died, and we had a case wherein it became material to prove how he received the wound in his nose, the statements here involved would not be admissible as res gestae. Certainly the decision of the question as to whether or not such statements were res gestae does not depend on the after event of insured's death. They were either res gestae or not res gestae at the time they were uttered."

The decision in Roth v. Travelers' Protective Ass'n of America, 102 Tex. 241, 115 S.W. 31, 34, is clearly shown by the following quotation from the opinion:

"The plaintiff took the deposition of J. W. Sullens, who met White and Roth on the streets of Henryetta as the latter were returning from the pond where they had been skating. In answer to an interrogatory the witness detailed statements made by White and Roth with reference to the latter's fall on the ice, all of which we hold to be inadmissible, because it was hearsay, except that which states the action of Roth in placing his hand to his head, which might be admitted, with the accompanying statement, 'It hurt my head and made it ache,' being limited to proof of the fact that his head ached at the time he was speaking, but not to be considered as evidence to establish the fact of the fall or of striking his head on the ice."

In International Travelers' Ass'n v. Branum, 109 Tex. 543, 212 S.W. 630, 632, the court said:

"The assignments of error must be sustained which complain of the admission in evidence of the statements

of the insured to his wife and to his trained nurse about having seen the burning man and about having fallen, two or three days previously, over the objection that such statements were hearsay and self-serving. The testimony was just as plainly an effort to prove the cause of the death by a self-serving narrative long after the event, in no sense res gestae, as was that mentioned and held inadmissible in Galveston v. Barbour, 62 Tex. 175, 50 Am.Rep. 519 * * *."

■■ In Texas Interurban Railway Co. v. Hughes, (Tex.Com.App.), 53 S.W.2d 448, 451, it was held that a statement after an event which is not a continuation of it cannot be res gestae, even. though it is made near the time of the occurrence; that to be res gestae the statement must be a part of the transaction or made under circumstances raising a presumption that they are spontaneous utterances arising out of the transaction itself. In Atlantic Insurance Company v. Boyette, Tex.Civ. App., 342 S.W.2d 379 (Ref. N.R.E., it was held that the testimony of an employee's widow that when her husband returned home from work at the usual time he told her he fell and sustained an injury, three hours or more before he returned home, was hearsay and not admissible to prove that he was injured in the course of his employment. In American General Insurance Company v. Coleman, 157 Tex. 377, 303 S.W.2d 370, judgment was rendered for the widow and child of Coleman for death benefits under the workmen's compensation law. Our Supreme Court reversed and rendered judgment for the insurance carrier on the ground that there was no evidence to sustain a finding that Coleman was injured while in the course of his employment. The employee's beneficiaries sought to sustain a verdict on the ground that permissible inferences from the evidence supported the findings that at the time of his injury Coleman was being transferred by his employer to another job; that the employee was on his way to his

employer's office for reassignment, etc.. The Court of Civil Appeals had held that testimony of a doctor that an hour and fifteen minutes after the accident deceased told him that at the time of his injury he was on the road to his employer's office, driving the employer's jeep, and that he was then being transferred by his employer to another job was not admissible for the purpose of showing that the employee was in the course of his employment when he was injured. However, the precise point here involved was not passed upon. But, such statement was held not admissible because it did not tend to explain the exciting event and did not relate to happenings which were causative or descriptive of the accident and it was made after the accident. See also Highway Insurance Underwriters v. Spradlin, Tex.Civ.App., 190 S.W.2d 181, 183 (Ref. W.M.) and 32 C.J.S. Evidence § 419, pp. 51–53. Harlan's statement was not a spontaneous exclamation. It was a mere narrative of a past transaction made when the condition of the declarant was such that it could not be concluded that it was the transaction or event itself speaking. We conclude it was inadmissible.

■ The improperly admitted statement of Mr. Harlan that the tick got on him that day is the nearest approach to evidence that he was injured while in the course of his employment that can be found in the record. However, if such statement were admissible, it does no more, when considered along with all other evidence in the record, or by itself, than to raise a mere surmise or suspicion that Harlan was injured while in the course of his employment. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. See also Federal Underwriters Exchange v. Hightower, Tex.Civ.App., 161 S.W.2d 338, (Writ Ref.) It was less reasonable to infer that the tick got on Harlan while he was at work than at some other time. Applying the rule laid down by our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 and Tudor v. Tudor, 158 Tex.

559, 314 S.W.2d 793, and in Judge Calvert's discussion of the question in 38 Texas Law Review 1, we conclude that, even if said statement by Harlan to his wife were admissible that, nevertheless, any possible evidence that Harlan was in the course of his employment when the tick got on him is so weak that, at best, it does no more than create a surmise or suspicion of such fact. Such evidence constitutes no more than a mere scintilla and calls for the application of the rule stated in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. We hold there was no evidence that Harlan was in the course of his employment at the time he was injured. The judgment is reversed and judgment is rendered for appellant.