TRINITY UNIVERSAL 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00404-CV








Trinity Universal Insurance Company


and Trinity Lloyd's Insurance Company, Appellants




v.




Nicole Cowan, Individually and as Assignee of Gregory D. Gage, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 93-07544, HONORABLE MIKE LYNCH, JUDGE PRESIDING






 

 Appellee Nicole Cowan took a default judgment in a personal injury lawsuit against
Gregory Gage in the amount of $250,000 in actual and punitive damages. Gage was covered by
a Texas homeowners insurance policy issued by Trinity Lloyd's Insurance Company; therefore,
Cowan sued Trinity Universal Insurance Company and Trinity Lloyd's Insurance Company
("Trinity") in the instant cause. Cowan obtained a partial summary judgment on March 30, 1994,
in which the trial court found insurance coverage but did not adjudicate damages. On May 9,
1994, the trial court rendered final judgment for Cowan in the amount of $373,225, representing
the amount of the underlying judgment, accrued interest, and attorney's fees. Trinity challenges
the trial court's judgment in four points of error. We will affirm the judgment of the trial court. 



BACKGROUND


 In January 1992, Trinity issued a homeowners insurance policy to the parents of
Gregory Gage, under which Gage was an additional insured. The cause of action giving rise to
the underlying suit developed while Gage was employed as a photo lab clerk at H.E.B. Photo
Place. A roll of film containing pictures of Cowan was delivered to H.E.B. for developing. 
Some of the pictures were provocative, and Gage made extra prints of several of the photographs
and took them home. He later showed the pictures to a few of his friends and left the pictures
with one friend with instructions to throw them away when he was through with them. It is
undisputed that Gage never intended to injure Cowan in any way. However, the friend Gage
entrusted with the pictures disregarded his instructions and showed the pictures to an individual
who turned out to be Cowan's friend. Cowan thereby learned of Gage's actions.

 Cowan filed the underlying lawsuit against Gage and H.E.B., alleging negligence
and gross negligence, among other claims. Gage notified Trinity of the lawsuit and requested a
defense and indemnity. Although Trinity initially provided Gage with a defense under a
reservation of rights, upon investigation of Cowan's claims Trinity concluded that her damages
were not covered by the insurance policy and denied Gage coverage and any further defense. 
Gage subsequently agreed to assign any and all claims he had against Trinity to Cowan in
exchange for a covenant not to execute against any of his assets except for the homeowners
insurance policy, and the case proceeded to trial on May 17, 1993. Gage failed to appear, and
Cowan put on evidence before the trial court. After hearing the evidence, the trial court found
that Gage's negligence and gross negligence proximately caused Cowan's injuries and rendered
a $250,000 judgment against him.

 Cowan then filed the instant suit against Trinity. She asserted a direct claim against
Trinity as judgment creditor of its insured, and she also alleged as assignee of Gage that Trinity
had committed various common law and statutory bad faith insurance practices that caused damage
to Gage. The parties filed cross-motions for summary judgment. Cowan moved for partial
summary judgment solely on the issue of insurance coverage, and Trinity moved for summary
judgment on the issue of insurance coverage as well as bad faith. After a hearing, the trial court
granted Cowan's motion for partial summary judgment and denied Trinity's motion, leaving many
issues for resolution at trial, including damages, Trinity's liability under various bad faith causes
of action, and attorney's fees.

 On the eve of trial, Cowan and Trinity settled the case. The Compromise and
Settlement Agreement essentially provided that Trinity would agree to a judgment in the amount
of the $250,000 underlying judgment, postjudgment interest, and $100,000 in attorney's fees, and
in exchange Cowan waived all claims for extracontractual damages over and above the
aforementioned sums. The settlement agreement expressly reserved Trinity's right to appeal the
issues of coverage and the amount of the underlying judgment:



2. On appeal, Trinity Lloyd's is limited to raising only two issues; (1) whether
the Court's rulings on insurance coverages in the [summary judgment] Order
dated March 30, 1994 were correct, and (2) whether Trinity Lloyd's is bound
by the face amount ($250,000) of the Final Judgment in the underlying case
attached hereto as Exhibit A.


3. Solely for the purposes of appealing issue No. 2 as set forth in paragraph 2
above, the following facts are stipulated:


* * * * *


 

 g. $100,000.00 is a reasonable and necessary attorneys' fee for plaintiff and
plaintiff is entitled to $100,000.00 as an attorneys' fee in the event Trinity
Lloyd's does not prevail on appeal.


The final judgment, which was "approved as to form" by the parties, was signed at an uncontested
docket on May 9, 1994.



DISCUSSION



A. Effect of the Settlement Agreement and Final Judgment

 We must dispose of a preliminary issue Cowan raises before addressing the four
points of error Trinity advances. Cowan contends that this appeal should be dismissed, or
alternatively, the trial court's final judgment should be affirmed because Trinity agreed to the final
judgment below. According to Cowan, although the settlement agreement "contemplates" an
appeal, the agreement does not state that the settlement was subject to an appeal nor did Trinity
expressly reserve the right of appeal in either the settlement agreement or the "agreed final
judgment." Moreover, argues Cowan, Texas law does not allow an appeal from an agreed final
judgment. 

 A party cannot appeal from or attack a judgment to which he or she consented or
agreed. See Gillum v. Republic Health Corp., 778 S.W.2d 558, 562 (Tex. App.--Dallas 1989, no
writ). However, the final judgment in the instant cause was not an agreed judgment. The
judgment states that the settlement agreement "had been entered into allowing the entry of this
final judgment." Cowan argues that this statement, coupled with the fact that the judgment was
attached to the settlement agreement as an exhibit and the fact that the agreement specifically
stated that Cowan would present the judgment to the trial court for signature, establishes that this
was an agreed judgment. We disagree.

 This Court must look to the circumstances surrounding rendition of the final
judgment and the recitations in the final judgment to determine if in fact it was "agreed." See Hill
v. Bellville Gen. Hosp., 735 S.W.2d 675, 678 (Tex. App.--Houston [1st Dist.] 1987, no writ). 
In examining the circumstances surrounding rendition of the final judgment in the instant cause,
our primary concern is to ascertain the intent of the parties when they entered into the settlement
agreement pursuant to which the judgment was rendered. See Gracia v. RC Cola--7-Up Bottling
Co., 667 S.W.2d 517, 520 (Tex. 1984). The parties entered into the settlement agreement to
facilitate resolution of the case. In its partial summary judgment, the trial court had determined
that Trinity was liable under the insurance policy. The parties then entered into the settlement
agreement instead of proceeding to trial to adjudicate the remaining issues of damages, Trinity's
liability under various bad faith causes of action, and attorney's fees. In the settlement agreement,
Trinity expressly reserved the right to appeal the issues of coverage and the amount of the
damages in the underlying suit. In addition, the judgment itself evidences the fact that the parties
did not intend to enter into an agreed judgment--the parties approved the judgment "as to form"
only, not "as to form and substance." See Hill, 735 S.W.2d at 678. 

 Cowan argues that even if Trinity reserved the right to appeal the coverage issue,
this Court should dismiss the appeal or, alternatively, affirm the trial court's judgment because
her extracontractual and bad faith causes of action are sufficient to support the final judgment,
contending that the settlement agreement itself specifies that the release of "extracontractual and
bad faith common law and statutory causes of action" does not release liability under those
theories up to the amount of the "agreed final judgment." Cowan cites State Farm Fire &
Casualty Co. v. Gandy, 880 S.W.2d 129 (Tex. App.--Texarkana 1994, writ granted), for the
proposition that an insurance company can be liable to its insured for the way a claim was handled
even if it is ultimately determined that there was no coverage. However, this argument is also
contrary to the intent of the parties in entering into the settlement agreement. The parties
expressly anticipated an appeal on the issues of coverage and the amount of the underlying
judgment when they entered into the agreement, and these are the exact issues Trinity raises in
this appeal. For these reasons, we will address the merits of Trinity's appeal.



B. Is Cowan's Claim Covered by the Insurance Policy?

 The homeowners policy Trinity issued to the Gages requires that any "bodily
injury" or "property damage" must have been caused by an "occurrence" to fall within the scope
of coverage. In its first and second points of error, Trinity argues that the trial court erred in
granting Cowan's motion for partial summary judgment because there was neither an "occurrence"
nor "bodily injury" required to trigger insurance coverage.

 The standards for reviewing a motion for summary judgment are well established:



(1) The movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that it is entitled to judgment as a
matter of law.


(2) In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the nonmovant will be taken as
true.


(3) Every reasonable inference must be indulged in favor of the nonmovant and
any doubts resolved in its favor. 



Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).



 1.  Meaning of "Occurrence"

 Trinity's first point of error raises the issue of the meaning of "occurrence" under
the homeowners policy issued to the Gages. The Trinity policy defines "occurrence" as "an
accident, including exposure to conditions, that results in bodily injury or property damage during
the policy period." (Emphasis added.) Cowan contends that the meaning of "occurrence" has
been established by a long line of Texas precedent. An occurrence, Cowan urges, "takes place
where the resulting injury or damage was unexpected or unintended, regardless of whether the
policyholder's acts were intentional." Hartford Casualty Co. v. Cruse, 938 F.2d 601, 605 (5th
Cir. 1991) (applying Texas law). According to Cowan, because it is undisputed that Gage did not
intend to injure her, (1) there was an unintentional injury, and thus an "occurrence," triggering
coverage under the policy.

 Trinity urges us to interpret occurrence to restrict coverage to exclude intentional
conduct resulting in an unintentional injury. Under Trinity's definition of occurrence, a
policyholder is denied coverage for deliberate tortious acts, even if the resulting injury or damage
is unintentional. In order to distinguish the line of cases Cowan cites, Trinity argues that the
Texas homeowners policy had been revised effective October 1, 1990, and that the cases Cowan
cites interpret the former occurrence definition rather than the definition at issue in the instant
cause. However, Trinity cites no authority supporting its restrictive definition. 

 We hold that an occurrence takes place where the resulting injury or damage was
unexpected or unintended, regardless of whether the policyholder's acts were intentional. 
Occurrence is defined under the Trinity homeowners policy as an "accident." Since accident is
not defined in the policy, we consider the term's generally accepted meaning. See Birdwell v.
Ferrell, 746 S.W.2d 338, 340 (Tex. App.--Austin 1988, no writ). Under Texas law, the word
accident has long been held to include unforeseen and unexpected consequences of otherwise
intentional acts. Under this interpretation, if the insured did not know or anticipate that his
intentional act would produce the injury, then as to the insured the injury produced was
unexpected, unforeseen, and, therefore, accidental. See, e.g., Republic Nat'l Life Ins. Co. v.
Heyward, 536 S.W.2d 549, 557 (Tex. 1976); Pacific Mut. Life Ins. Co. v. Schlakzug, 183 S.W.2d
709, 711 (Tex. 1944); Travelers Ins. Co. v. Volentine, 578 S.W.2d 501, 503 (Tex. Civ.
App.--Texarkana 1979, no writ); see also State Farm Fire & Casualty Co. v. S.S., 858 S.W.2d
374, 377 (Tex. 1993). (2)

 Our holding derives further support from the comments of Don Olson, Chairman
of the Readable Homeowners Advisory Committee. This committee was charged with
recommending changes to the standard Texas homeowners policy. When the 1990 revision of the
Texas homeowners policy was presented to the Texas Board of Insurance, Chairman Olson
informed the Board:


 What we have accomplished is a revision of every one of the homeowner
forms and endorsements, and this will be presented today. And this was
accomplished in line with your charge of making sure that there is no restriction
in coverage available to any insured under an existing homeowners policy in
Texas.



Hearing on Property Insurance Rules Concerning Texas Homeowners Policy and Related Matters
Before Texas State Board of Insurance, Board Docket No. 1715, at 5 (Feb. 14, 1990) (transcript
available from State Board of Insurance). (3) Before the 1990 revision, the term occurrence
encompassed claims for unintentional injuries resulting from intentional acts. Because the 1990
revision was not intended to restrict coverage, policies issued after the revision must also cover
unintentional injuries resulting from intentional acts. 

 Therefore, Gage's conduct fits within the policy definition of occurrence so long
as he neither expected nor intended to cause Cowan's resulting injuries. As even Trinity
concedes, Gage neither intended nor knew with substantial certainty that Cowan would be injured. 
However, Trinity attempts to argue on appeal that Gage's intent to injure was at least a fact issue
incapable of summary disposition on the ground that Gage could have reasonably expected
Cowan's injuries to result from his actions. We reject this argument because Trinity failed to
make intent to injure a fact issue in its motion for summary judgment and response to Cowan's
motion. Trinity produced no summary-judgment proof on the issue of Gage's intent to injure;
instead, Trinity relied on its defense that the voluntary and intentional nature of Gage's conduct
rendered Cowan's claim outside the coverage of the policy. Cowan has established as a matter
of law that an intentional act falls within the scope of coverage if it results in unintentional
injuries, and Cowan's undisputed summary judgment evidence established that Gage neither
intended to injure Cowan nor expected her to find out about the unauthorized prints. We
accordingly overrule Trinity's first point of error.



 2.  Meaning of "Bodily Injury"

 In its second point of error, Trinity complains that the trial court erred in granting
Cowan's motion for partial summary judgment because Cowan neither alleged nor proved "bodily
injury" within the coverage of the insurance policy. According to Trinity, Cowan's alleged
"mental anguish" is not bodily injury under Texas law. See Travelers Indem. Co. v. Holloway,
17 F.3d 113, 115 (5th Cir. 1994) (holding that "in the context of the policy at issue and the facts
alleged here," allegations of mental anguish do not trigger bodily injury coverage under a Texas
homeowners policy); see also SL Indus., Inc. v. American Motorists Ins. Co., 607 A.2d 1266,
1273-74 (N.J. 1992) (concluding that mental anguish, "without physical manifestations," is not
bodily injury). Cowan responds that because the phrase bodily injury encompasses emotional
distress with accompanying physical manifestations, she alleged and proved bodily injury within
the policy language.

 We hold that an allegation of mental anguish or emotional distress is sufficient to
support evidence and damages for the accompanying physical manifestations. See Bulgerin v.
Bulgerin, 724 S.W.2d 943, 945 (Tex. App.--San Antonio 1987, no writ) ("Since physical
manifestations of mental anguish or distress were closely interrelated and, in fact, inseparable
from mental anguish, they cannot be construed to constitute a new or different cause of action or
a departure from the pleadings.") (emphasis added); see also Mokry v. University of Tex. Health
Science Ctr., 529 S.W.2d 802, 805 (Tex. Civ. App.--Dallas 1975, writ ref'd n.r.e.). (4) Cowan
alleged damages for mental anguish in her pleadings, and the evidence at the trial of the
underlying case established that she suffered from headaches, stomachaches, and loss of sleep as
a result of her emotional distress. 

 According to Trinity, a plaintiff's pleadings must allege bodily injury; an allegation
of "mental anguish" does not raise a claim for the resulting physical manifestations. In support
of its argument, Trinity cites Holloway and the "complaint allegation rule." However, Trinity's
arguments are unpersuasive. Holloway is distinguishable because it involved pure mental anguish
with no mention of any accompanying physical manifestations. The court explained, "To
determine whether the policy covers the . . . lawsuit, we look to the facts of the underlying claim. 
There are not facts in the record evincing any injury other than emotional distress." Id. at 115
(citation omitted). The court's holding thus rested in part upon the facts of the underlying claim,
which failed to include evidence of physical manifestations. In contrast, the evidence in the
underlying case in the instant cause revealed physical manifestations of Cowan's mental anguish. 

 The complaint allegation rule Trinity cites enables an insurer to rely on the
plaintiff's allegations in determining whether the facts are within coverage. See Fidelity &
Guaranty Ins. Underwriters, Inc. v McManus, 633 S.W.2d 787, 788 (Tex. 1982). However, we
have concluded that an allegation of mental anguish implicitly raises a claim for the resulting
physical manifestations. We hold that the trial court did not err in granting summary judgment
to Cowan because she pleaded and proved bodily injury within the scope of the homeowners
policy and, therefore, overrule Trinity's second point of error.



C. Can an Insurer Challenge Reasonableness of Damages Found in Underlying Case?

 Before we address the merits of Trinity's third and fourth points of error, we must
dispose of Cowan's contention that Trinity's third and fourth points of error cannot serve as a
basis for reversal of the trial court's judgment because neither ground was presented to the court
in the response to Cowan's motion for partial summary judgment. See Tex. R. Civ. P. 166a(c)
("[I]ssues not expressly presented to the trial court by written motion, answer or other response
shall not be considered on appeal as grounds for reversal."); City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 678 (Tex. 1979). Cowan further argues that neither issue was presented
to the trial court at any other time before rendition of the final judgment. See Pirtle v. Gregory,
629 S.W.2d 919, 920 (Tex. 1982) ("The reason for the requirement that a litigant preserve a trial
predicate for complaint on appeal is that one should not be permitted . . . to complain about an
error at trial and then surprise his opponent on appeal . . . .").

 While Cowan's arguments would be persuasive in the context of a summary
judgment disposing of all matters in controversy, the instant cause involved a partial summary
judgment, which resolved only the issue of insurance coverage. The settlement agreement
pursuant to which final judgment was rendered specifically provided that Trinity reserved the right
to appeal the issue of whether Trinity was bound by the $250,000 face amount of the underlying
judgment. Therefore, we will address Trinity's remaining two points of error. 

 In its third point of error, Trinity challenges the reasonableness of the $250,000
underlying damage award. According to Trinity, Gage breached his obligation to defend Cowan's
lawsuit against him with due diligence and reasonable prudence, thus precluding enforcement
against Trinity of the resulting excessive damage award. In response, Cowan contends that
Trinity is barred from collaterally attacking the reasonableness of the underlying damage award.

 In Employers Casualty Co. v. Block, 744 S.W.2d 940 (Tex. 1988), the supreme
court unequivocally held that an insurer was barred from collaterally attacking the reasonableness
of damages in an agreed judgment between the insured and the injured party--herein Gage and
Cowan. Id. at 943. "A collateral attack is an attempt to avoid the effect of a judgment in a
proceeding brought for some other purpose." Ranger Ins. Co. v. Rogers, 530 S.W.2d 162, 167
(Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.). In Ranger Insurance, a case cited with approval
in Block, this Court noted that an insurance company was not a stranger to a suit against its
insured because the insurer had notice of the suit and had been offered the opportunity to defend
the suit. Therefore, the insurance company was barred from collaterally attacking the terms of
a consent judgment between the insured and the injured party. Id.

 In an effort to distinguish Block, Trinity cites section 75 of the Restatement of
Judgments and contends that insureds, "being among the class of indemnitees covered by section
75," must defend themselves with "due diligence and reasonable prudence" as a condition of
indemnification, or "the adversary process that justifies collateral estoppel is absent." See
Restatement (Second) of Judgments § 75 (1982). However, Trinity's argument fails to distinguish
between a collateral attack of a final judgment and the doctrine of collateral estoppel, which bars
relitigation of specific issues. The supreme court in Block clarified the distinction:



"A collateral attack is an attempt to avoid the effect of a judgment in a proceeding
brought for some other purpose." Collateral estoppel refers to issue preclusion
because it bars relitigation of any ultimate issue of fact actually litigated and
essential to the judgment in the prior suit.



Block, 744 S.W.2d at 943 (citations omitted). In Block, the supreme court addressed two separate
issues: (1) whether an insurer can collaterally attack an agreed judgment by litigating the
reasonableness of the damages; and (2) whether collateral estoppel bars the insurer from
contesting coverage in the claimant's suit against the insurer. With regard to the latter issue, the
court held that because the agreed judgment between the insured and the injured party did not
establish coverage, the insurer was free to contest coverage "since this does not constitute a
collateral attack on the liability judgment." Id. The court then went on to determine whether the
doctrine of collateral estoppel applied to bar litigation of the coverage issue and held that the
insurer was not precluded from litigating the issue of coverage. With regard to the first issue, the
court clearly held that an insurer cannot collaterally attack the reasonableness of the underlying
damage award. We are thus unpersuaded by Trinity's attempts to distinguish Block's holding.

 A collateral attack may be made upon a judgment in limited circumstances
involving the jurisdiction or capacity of the court rendering judgment. Id. Trinity attempts to
collaterally attack the underlying judgment upon neither of these grounds but instead upon the
ground that the amount of the underlying judgment was unreasonable because Gage failed to
diligently defend himself against Cowan's claims. The unreasonableness of the underlying
judgment is not a permissible ground for a collateral attack. Id. Trinity makes much of the fact
that after Gage entered into an agreement assigning his claims against Trinity to Cowan in
exchange for her covenant not to execute, he failed to appear at trial to defend himself and thus
allowed entry of a default judgment. Trinity argues that because Gage failed to defend himself
against Cowan's claims, Trinity should not be bound by the amount of the underlying judgment. 
However, both Block and Ranger Insurance involved consent judgments in which the insured
made no attempt to put on a defense against the injured plaintiff. 

 Thus, it is clear that an insured's failure to defend himself diligently does not
provide the insurer with grounds for collaterally attacking the underlying judgment. We hold that
where a judgment is rendered against an insured, the insurer is bound by the amount of the
underlying judgment. We accordingly overrule Trinity's third point of error.



D. Is Apportionment of Damages Required?

 Trinity argues in its fourth point of error that the trial court erred in rendering
judgment for Cowan in the amount of the underlying judgment without apportioning covered
damages for bodily injury from the non-covered damages for mental anguish. Trinity reasons that
even if Cowan was entitled to recover damages for the physical manifestations of her mental
anguish, the homeowners policy did not cover her remaining damages arising from her mental
anguish. In response, Cowan contends that apportionment of damages was not required because
physical manifestations of emotional distress are inseparable from the underlying emotional
distress and because the policy at issue in the instant cause makes no mention of an apportionment
of damages. We agree with both contentions.

 We have already determined that a plaintiff's emotional distress and resulting
physical manifestations constitute bodily injury. We reject Trinity's more restrictive view that
only the physical manifestations resulting from mental anguish constitute bodily injury because
the accompanying physical manifestations are inseparable from the underlying mental anguish. 
Therefore, apportionment was unnecessary because all of Cowan's damages constitute bodily
injury. 

 Moreover, the policy at issue plainly provides that if suit is brought for bodily
injury caused by an occurrence to which coverage applies, the insurer will pay "for the damages
for which the insured is legally liable." We have previously rejected Trinity's apportionment
argument in a case involving similar policy language. In American Home Assurance Co. v.
Safway Steel Products Co., 743 S.W.2d 693 (Tex. App.--Austin 1987, writ denied), the insurer
argued that the insurance policy did not cover punitive damages. The insurance policy at issue
provided that the insurer agreed to pay "all sums" which the insured became legally obligated to
pay as "damages." This Court held that the term "damages" encompassed both punitive and
compensatory damages, reasoning that the average insured would expect protection against
liability for all sums that the insured became obligated to pay. Id. at 702. In the instant cause,
although the insurer did not agree to pay "all sums," it did agree to pay "up to our limit of
liability." The policy defines "limit of liability" as the total liability "for all damages resulting
from any one occurrence." We therefore interpret the policy to provide that once coverage was
triggered by an accidental bodily injury, Trinity became obligated to pay all sums for which Gage
was held liable. Trinity's fourth point of error is overruled.



CONCLUSION


 Having overruled all of Trinity's points of error, we affirm the judgment of the trial
court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: August 16, 1995

Publish 

1.   In its brief, Trinity acknowledges that "[t]he only thing Gregory Gage did not intend
was Nicole Cowan finding out what he had done."
2.   In S.S., the supreme court held that damage may be unintended though the acts causing
the damage were intentional. Although the case involved an intentional-injury exclusion, not
an occurrence provision, the supreme court looked to Republic National and the construction
of the term "accidents" in reaching its holding, recognizing that "the same reasoning applies in
cases when the policy contains an intentional injury exclusion." S.S., 858 S.W.2d at 377. 
Therefore, S.S. provides persuasive guidance for our analysis.
3.   Although the transcript of the hearing was not a part of the record on appeal, this
Court has the authority to take judicial notice of it. Rule 201(b)(2) of the Texas Rules of
Civil Evidence provides that "[a] judicially noticed fact must be one not subject to
reasonable dispute in that it is . . . (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned." Tex. R. Civ. Evid.
201(b)(2). Rule 201(f) authorizes judicial notice to be taken "at any stage of the
proceeding." Id. 201(f). We acknowledge that an appellate court should be reluctant to take
judicial notice when the trial court was not requested to do so and was not given an
opportunity to examine the necessary source material. See Sparkman v. State, 519 S.W.2d
852, 855 (Tex. 1975). However, the fact that the trial court was not requested to take judicial
notice of the hearing transcript in the instant cause is inconsequential because the transcript
merely supports the trial court's determination that Cowan's claim was covered by the
insurance policy. 
4.   No Texas court has determined whether pure mental anguish constitutes bodily
injury, as acknowledged by the Fifth Circuit in Holloway. 17 F.3d at 115. Cowan argues
that McGovern v. Williams, 741 S.W.2d 373 (Tex. 1987), supports her proposition that pure
mental anguish constitutes bodily injury. In McGovern, the supreme court was called on to
decide whether loss of consortium is a separate bodily injury to a spouse for purposes of
applying the minimum insurance policy limits contained in a couple's insurance policy. The
case turned on the construction of the phrase bodily injury as used in the insurance statute. Id.
at 374. The court held that the wife could not recover the policy limit for loss of consortium
because it was a purely derivative claim that arose as a consequence of injuries to her husband. 
Id. In explaining its decision, the court suggested that a direct claim for either physical harm
or mental anguish constitutes bodily injury under the statute:


Loss of consortium, therefore, does not involve any allegation of physical harm,
nor does it include an element of mental anguish. Mental anguish is a cause of
action separate and distinct from loss of consortium. In the present case, Mrs.
McGovern neither alleged physical harm nor mental anguish. Her claim for loss
of consortium, therefore, cannot constitute a claim of "bodily injury."


Id. at 374-75 (citation omitted). While this language suggests that pure mental anguish
constitutes bodily injury, we need not decide this issue.